In re Gary RICH, Debtor.

Marion RICH, Plaintiff,

v.

Gary RICH, Defendant.

Bankruptcy No. 83–00137–JG.
Adv. A83–0320–JG.

United States Bankruptcy Court,
D. Massachusetts.

May 15, 1984.

Joseph A. Kuchinski, Jr., Braintree, Mass., for defendant.

Lucy West Behymer, Gitlin, Emmer, Kaplan & Bohn, Boston, Mass., for plaintiff.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

The Plaintiff, the debtor's former wife, filed this Complaint to determine the non-dischargeability pursuant to 11 U.S.C. Section 523(a)(5) of the debtor's obligation in their Separation Agreement to pay an unsecured home improvement loan, alleging that the assumption of the liability is a debt to the wife in the nature of alimony, maintenance or support. The debtor's Answer denies that the liability is a debt to the former spouse and contends that the obligation is not for alimony, maintenance or support. At trial, the parties submitted a Stipulation Of Facts and the Separation Agreement, financial statements submitted to the Probate Court, and the Divorce Decree. The Plaintiff also briefly testified. Based upon the agreed facts, documentary evidence, and testimony, the Court finds the following facts.

After a twelve year marriage and two children, one of whom has cerebral palsy, the Plaintiff and Defendant were divorced in July 1982. The Separation Agreement, incorporated into the Divorce Decree, provided that the husband would pay an unsecured home improvement loan to the First National Bank of Boston requiring monthly payments of $116.89. In 1980, the Plaintiff's uncle transferred title to his home to a Trust, made the Plaintiff and Defendant Trustees, and their children beneficiaries. When the family moved into the home, the Town of Randolph installed sewerage. To fund this, the Richs obtained an unsecured loan from the First National Bank in the amount of $4500. In addition to Exhibit C entitled personal debts, the Separation Agreement provided that the wife would have custody of the children (Exhibit F),

that the wife would be the sole Trustee of the Trust, that the husband would pay the wife $120 per week as child support, (Exhibit H), that the husband would pay half of the legal fees for the special needs lawsuit involving their child Diana (Exhibit C); that the husband would pay all medical expenses (Exhibit I) and would maintain life insurance (Exhibit J). Both parties waived the right to seek alimony, support or maintenance from each other (Exhibit E). At the time of the divorce the Plaintiff was employed as a receptionist earning $131 net income per week, and the Defendant was employed as an extruder operator, earning net income of $271 per week.

Section 523(a)(5) provides that an individual debtor is not discharged from any debt:

"to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, but not to the extent that

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

The debtor contends that the debt is not subject to the exception to discharge set forth in Section 523(a)(5) because the liability is not owed to the spouse, but instead is payable to a third party. This contention is without merit for two reasons. Although a debt assigned to another entity is dischargeable, 11 U.S.C. Section 523(a)(5)(A), there is authority that an agreement to assume a joint debt owed to a third party is not an assignment of debt, but rather is a third party beneficiary contract. See In Re Spong, 661 F.2d 6, 10 (2d Cir. 1981); In Re Petoske, 16 B.R. 412 (Bkrtcy.E.D.N.Y. 1982). The debtor's contention also overlooks the legislative history to Section 523(a)(5) which makes clear that despite the

anti-assignment language, Congress intended to make nondischargeable:

"... any debts resulting from an agreement by the debtor to hold the debtor spouse harmless on joint debts, to the extent the agreement is in payment of alimony, maintenance, or support." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 364 (1977), U.S.Code Cong. & Admin.News 5787, 6320 (1978). In accordance with the legislative history, the majority of decisions have considered a debtor's assumption of joint debts an obligation to the former spouse within the meaning of Section 523(a)(5). E.g., In Re Thomas, 21 B.R. 571, 574 (Bkrtcy.E.D.Pa.1982) (debtor's assumption of mortgage payments); Matter of Jensen, 17 B.R. 537, 539 (Bkrtcy.W.D.Mo. 1982) (Debtor's assumption of various joint debts, including credit card debts); In Re Petoske, 16 B.R. 412, 413 (Bkrtcy.E.D.N.Y. 1982) (debtor's assumption of joint credit card debts); In Re Harrod, 16 B.R. 711, 713–14 (Bkrtcy.W.D.Ky.1982) (debtor's assumption of car payments); Stranathan v. Stowell, 15 B.R. 223, 225–26 (Bkrtcy.D. Neb.1981) (debtor's assumption of various joint debts); In Re Arterburn, 15 B.R. 189, 191 (Bkrtcy.W.D.Okl.1981) (debtor's assumption of one-half of joint debts); In Re Mullins, 14 B.R. 771, 771–73 (Bkrtcy.W.D. Okl.1981) (debtor's assumption of second mortgage). Those decisions holding that a debtor's assumption of debt is not an obligation to the spouse ignore the legislative history and inappropriately emphasize form over substance. See, e.g., In Re Drumheller, 13 B.R. 707, 709 (Bkrtcy.W.D.Ky.1981). Accordingly, it is my conclusion that the debtor's agreement to assume the joint debt to the First National Bank is a debt to a former spouse or child of the debtor within the meaning of Section 523(a)(5).

■ The next issue to be determined is whether the debtor's obligation to pay the loan is a liability in the nature of alimony to, maintenance or support of the former spouse or children and thus nondischargeable, as opposed to an agreement for the division of property, which would be a dischargeable liability. See In Re Thomas, 21

B.R. 571, 572 (Bkrtcy.E.D.Pa.1982). This determination is made according to bankruptcy, not state law. See *In Re Petoske*, 16 B.R. 412, 413 (Bkrtcy.E.D.N.Y.1982). The purpose of the inquiry is to ascertain the intent of the parties which requires an examination of the Decree and Agreement, and extrinsic evidence of the parties circumstances at the time of the divorce. *In Re Daviau*, 16 B.R. 421, 424 (Bkrtcy.D. Mass.1982). The label given an obligation in a Divorce Decree or Separation Agreement is not determinative of whether a payment was intended to provide alimony, maintenance or support or was intended to divide property. *See In Re Ingram*, 5 B.R. 232, 234 (Bkrtcy.N.D.Ga.1980).

■ In assessing the nature of an obligation arising out of a Divorce Decree or Separation Agreement, courts have applied a variety of factors. The parties understanding of the provision is obviously important in determining the nature of the liability. *See In Re Lineberry*, 9 B.R. 700, 705 (Bkrtcy.W.D.Mo.1981). The type of obligation assumed, whether the debt is for necessities or luxuries, is relevant. *See In Re Spong*, 661 F.2d 6, 9 (2d Cir.1981). The location and context of the provision calling for assumption may indicate the nature of the debt. *See In Re Francisco*, 1 B.R. 565, 567–68 (Bkrtcy.W.D.Va.1979). The method of payment, whether it is by installments or lump-sum, may indicate the purpose of the provision, installment payments tending to indicate that support was intended. *See In Re Snyder*, 7 B.R. 147, 150 (D.C.W. D.Va.1980). The parties financial circumstances at the time of the divorce should also be considered. The relative earning power and income disparity of the spouses, and the adequacy of support absent the agreement to assume should be examined to determine the purpose of the obligation. *See Nitz v. Nitz*, 568 F.2d 148, 152–53 (10th Cir.1977); *In Re Hoover*, 14 B.R. 592, 596 (Bkrtcy.N.D.Ohio 1981).

■ Applying these factors to the evidence presented in this case, it is my conclusion that the parties did not envision the subject provision as effectuating a division of property. Mrs. Rich explained that her understanding was that the assumption obligation was in the nature of child support. She testified that she waived all rights to alimony for herself in exchange for her husband's agreement to support the children. Since the debtor did not testify, these facts went uncontroverted.

The purpose of the loan was to install sewerage in the family home, which is owned by a Trust of which the children are the sole beneficiaries. Even though the Plaintiff is the sole Trustee, she is unable to terminate the Trust. By its terms, upon termination of the Trust, the equity will be distributed to the children. Moreover, the purpose of the loan was to fund the installation of a sewer system, which certainly falls into the category of a necessity as opposed to a luxury item. These facts tend to show that the obligation is for the benefit of the children.

Although the assumption of the loan obligation is not labeled alimony, maintenance, or support, a reading of the Agreement as a whole indicates that child support was the intent of the parties. The Agreement for Assumption of the loan is set forth in Exhibit C of the Separation Agreement, entitled "Personal Debts." Although Exhibit H deals with support of the minor children, this separate category is not exclusive. Medical and dental expenses, life insurance, and the obligation to pay attorney's fees arising out of a child's special needs lawsuit, all of which can be considered in the nature of child support, are the subject of other parts of the Agreement. The fact that the bank loan is not included in the specific support section is not determinative.

The financial circumstances of the parties at the time of the divorce supports a finding that the obligation is child support and maintenance. When the parties were separated, the Plaintiff was at home caring for the two children, one of whom is a disabled special needs child. As of the time of the Divorce Decree, she was employed as a receptionist with a net income of $131 per week. The debtor at this time

had take home pay of $266 per week. Unlike Mrs. Rich he was a skilled laborer with eleven years of experience. It is also important to note that Mrs. Rich has custody of the two children, and thus is unable to easily increase her earning ability. These facts lead me to conclude that the Agreement to assume the home improvement loan was for the purpose of child support.

The fact that regular support payments do not increase upon satisfaction of the loan does not compel a different conclusion. The amount of agreed child support is not permanent and is always subject to review and modification by the Probate Court. *See Mass.Gen.Laws* Chapter 208 Section 37.

Because repayment of the loan is in the nature of child support, it is nondischargeable pursuant to 11 U.S.C. Section 523(a)(5). Judgment is granted for the Plaintiff in this adversary proceeding.