**In re Robert W. GIBBONS, Debtor.**

**Lucinda M. GIBBONS and Lipsey & Skolnik Esquires Ltd., Plaintiffs,**

**v.**

**Robert W. GIBBONS, Defendant.**

**Bankruptcy No. 93–10131.
Adv. No. 93–1054.**

United States Bankruptcy Court,
D. Rhode Island.

Oct. 20, 1993.

474

Thomas Tarro, Fortunato & Tarro, Warwick, RI, for debtor/defendant.

Robert S. Parker, Providence, RI, for plaintiffs Lipsey & Skolnik Esquires Ltd.

### DECISION AND ORDER

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Before the Court is Plaintiffs' Complaint to determine whether certain debts arising out of the Decision and Order of the Providence County Family Court granting the Debtor a final divorce are dischargeable. Debtor's ex-wife, Lucinda Gibbons seeks a determination that $850,000 awarded to her in lieu of alimony and $35,000 awarded as partial payment of her legal expenses are nondischargeable under 11 U.S.C. § 523(a)(5), because they are in the nature of alimony or support. The parties agree that the matter may be decided on the pleadings, and that an evidentiary hearing is unnecessary.

### FACTUAL BACKGROUND

Lucinda and Robert Gibbons were married on July 28, 1973. Early in the marriage, Lucinda worked full time as a licensed practical nurse ("LPN") while her husband attended podiatry school. During the seventeen year marriage the parties had five chil-

dren who now range in age from 7 to 15 years. Over the years Lucinda worked with her husband in his podiatry practice and in January, 1986, after the birth of their fifth child, she stopped working as an LPN.

Mr. Gibbons filed the instant divorce case on October 9, 1987, and his complaint was contested by Mrs. Gibbons. On December 27, 1990, the Family Court for Providence County granted Mr. Gibbons an absolute divorce on the ground of irreconcilable difference, and awarded joint custody of the five children, with Mrs. Gibbons maintaining physical possession of the children. The Court further ordered that:

1) Child support be paid to Mrs. Gibbons in the amount of $5,000 per month;

2) Mr. Gibbons pay the cost of health insurance coverage for Mrs. Gibbons and the five children, including dental insurance and payment of the children's medical expenses not covered by insurance;

3) Mr. Gibbons transfer seventy percent of the marital assets to Mrs. Gibbons "in lieu of alimony." (Tr. Master's Oral Decision, Plaintiffs' Ex. C at 31.) The Master determined this amount to be $850,000 and ordered Mr. Gibbons to transfer assets totaling $417,223 to Mrs. Gibbons forthwith, and gave him the option of paying the $442,777 balance [1] within five days, or over five years with interest at 12% per annum; and

4) Mr. Gibbons pay Mrs. Gibbons' legal fees in the amount of $82,602.

Mr. Gibbons appealed the Family Court order to the Rhode Island Supreme Court, which affirmed the awards of child support and seventy-percent distribution of marital assets. The Supreme Court modified the award of counsel fees, ordering Mr. Gibbons to pay only $35,000 of his ex-wife's legal expenses. The Court further reduced the lump sum amount Mr. Gibbons was ordered to pay by $10,000 (correcting the mathematical error), and reduced the interest on the five year payment option to 6% per annum. Finally the Supreme Court ordered the Family Court to clarify when Mr. Gibbons' obli-

---

**1.** The sum of these two figures does not equal $850,000, but this mathematical error was corrected by the Rhode Island Supreme Court on appeal.

gation to pay for his ex-wife's health insurance expires. (*See* R.I. Supreme Court Decision, *Gibbons v. Gibbons,* Plaintiffs' Ex. D.)

An issue still outstanding is the value of Mr. Gibbons' podiatry practice, vis-a-vis the seventy percent distribution of marital assets. The Supreme Court was equally divided on the issue and affirmed the value as determined by the general master. Mr. Gibbons requested a rehearing en banc, which was granted, and the matter is still pending before the Rhode Island Supreme Court.[2]

Mr. Gibbons filed his Chapter 11 petition on January 19, 1993, and does not challenge that portion of Lucinda Gibbons' complaint that seeks a determination that child support and health insurance obligations are nondischargeable. He takes serious issue, however, with the status of the $850,000 awarded in lieu of alimony, and the award of counsel fees for his ex-wife, even as reduced by the Rhode Island Supreme Court.

### DISCUSSION

 Section 523(a)(5) of the Bankruptcy Code excepts from discharge any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree ... or property settlement agreement, but not to the extent that—

. . . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, *unless such liability is actually in the nature of alimony,* maintenance, or support.

11 U.S.C. § 523(a)(5) (emphasis added). An obligation to a former spouse is in the "nature of alimony, maintenance, or support" if at the time of the divorce, the settlement agreement or divorce decree functioned as support. *See Bonheur v. Bonheur (In re Bonheur),* 148 B.R. 379, 381 (Bankr.E.D.N.Y. 1992). The Bankruptcy Court is not bound by the labels attached to payments to a former spouse but is required to look beyond the designation and make an independent

determination whether the obligation is the result of a division of marital property, or whether it was intended to be in the nature of alimony or support. *See Young v. Young (In re Young),* 72 B.R. 450, 452 (Bankr.D.R.I. 1987); *Parisi v. White (In re White),* 26 B.R. 572, 574 (Bankr.D.R.I.1983). Other courts have considered a number of factors in determining the nature of a debt pursuant to § 523(a)(5), and we have previously focused on the following seven factors:

1) the nature of the obligation assumed (whether for necessaries or luxuries);

2) the type of payment (lump sum or installment);

3) the length of the marriage;

4) whether children of the marriage have been provided for;

5) the relative earning power of the spouses;

6) the adequacy of support without the debt assumption;

7) the understanding of the parties concerning the agreement.

*McCartin v. McCartin (In re McCartin),* 145 B.R. 118, 119 (Bankr.D.R.I.1992); *Wheeler v. Wheeler (In re Wheeler),* 122 B.R. 645, 647–48 (Bankr.D.R.I.1991); *In re Young,* 72 B.R. at 452–53. Depending on the facts, certain of these elements are given more weight than others.

 In addition, "the intention of the parties is a crucial element." *In re Young,* 72 B.R. at 452. Because the instant case involves a contested divorce, with no agreements to be interpreted, our inquiry will focus on the intent of the general master of the Family Court in making his award. After a careful analysis of Master O'Brien's decision in the Family Court, the opinion of the Rhode Island Supreme Court on appeal, and considering the applicable factors listed above, we find that the Debtor's obligation to pay his former spouse 70% of the marital assets and to pay her legal expenses in the amount of $35,000 are in the nature of alimony or support and are therefore nondischargeable.

---

**2.** The determination of this issue will effect the total amount Mrs. Gibbons would be entitled to

under the general master's award of seventy percent of the marital assets.

The most significant factor in this case is the glaring disparity of earning capacity between the parties. The Debtor operates a lucrative podiatry practice which Mrs. Gibbons helped to establish, initially by putting her husband through school and then by assisting in setting up the office and working as nurse. She continued to be an important part of her husband's practice by performing maintenance services, even with the assistance of the children. (*See* Tr. Master's Oral Decision, Plaintiffs' Ex. C at 4–6; R.I. Supreme Court Decision, *Gibbons v. Gibbons,* Plaintiffs' Ex. D at 2–3). Master O'Brien found that the Debtor's annual income was approximately $275,000 per year, while Mrs. Gibbons "has zero income or no income ... [and] employment in my opinion at this point in time or even the suggestion of same as to the Defendant quite frankly is ludicrous." (Tr. Master's Oral Decision, Plaintiffs' Ex. C at 37.) The Supreme Court also noted:

> There is further no question that the husband's earning power far exceeds that of the wife and is likely to do so on a permanent basis. The wife's ability to seek employment was found by the master to be severely limited in light of her role as caretaker of five children, one of whom has special needs.

(R.I. Supreme Court Decision, *Gibbons v. Gibbons,* Plaintiffs' Ex. D at 5).

The entire record in this case demonstrates that the Family Court clearly intended the award of seventy percent of the marital assets to be in the nature of support and/or alimony. The Master, recognizing that Mrs. Gibbons has little or no chance of re-entering the work force (Tr. Master's Oral Decision, Plaintiffs' Ex. C at 37), made the award to provide for her subsistence. While the award may appear to be large, it must be viewed in light of Mr. Gibbons' high earning potential, and the period for which Mrs. Gibbons will require support.[3]

The Debtor argues that the Master considered the needs of Mrs. Gibbons in his award of child support, and that the $5,000 per month was intended to serve as support for Mrs. Gibbons as well as for the five children. This argument is totally unsupported by the record. Master O'Brien spoke at length on the child support issue in his oral decision and stated that the Rhode Island Child Support Guidelines are to determine "minimal support, not what they are truly entitled to but a figure below which you almost cannot go." (Tr. Master's Oral Decision, Plaintiffs' Ex. C at 36.) The Master acknowledged that Mr. Gibbons' obligation under the guidelines would be $4,369 per month. Accordingly, he awarded Mrs. Gibbons $5,000 per month "for the benefit of the children so that it [sic] they can live in accordance with the[ir] standard of living...." (Tr. Master's Oral Decision, Plaintiffs' Ex. C at 38–39). We find that the Master was thinking *only* of the children in making this award, that he had no intention of including the support of Mrs. Gibbons therein, and we agree with the Master right down the line.

The Debtor also argues, citing *In re Townsend,* 155 B.R. 235 (Bankr.S.D.Ala.1992), that the award of 70% of the marital assets is "alimony in gross" as opposed to "periodic alimony" and is therefore dischargeable. In *Townsend,* the Court was considering whether the Debtor's obligation to pay his ex-wife $350 per month for five years was dischargeable. The court said, "Alabama recognizes to [sic] forms of alimony payable to a spouse: *periodic* and *in gross.* Periodic alimony provides a method for a spouse's maintenance and support while alimony in gross is a form of property settlement paid either in a lump sum or fixed installments of a specific sum." *Id.* at 238. The Court found the amount to be periodic alimony, and thus nondischargeable, because the nature of the payments were rehabilitative, providing the Debtor's ex-wife "the ability to meet immediate living expenses necessary to reestablish herself in the community." *Id.*

We find it unnecessary to go into the distinction between *periodic* and *in gross* alimony because, when all is said and done,

---

3. Mrs. Gibbons is forty-one years old and the caretaker of five minor children, one of whom requires special attention. As a result of being the custodial parent with the continuing respon- sibilities that follow, it is reasonable to expect that her need for support will extend far into the future.

the analysis still focuses on whether the debt is actually in the nature of maintenance/support, or property division. Adding new labels merely creates confusion. In the instant case we have already found that the award to Mrs. Gibbons is in the nature of alimony or support, so any discussion of the Alabama terms "alimony in gross" and "periodic alimony" is superfluous.

Finally, we address the issue of Mrs. Gibbons' attorneys' fees, as reduced by the Rhode Island Supreme Court. Master O'Brien found that Mrs. Gibbons "absolutely to protect herself and to protect her children, she being the custodial parent at this time by way of court order, of necessity had to engage counsel to represent her in this action. . . . Because I suggest to you, and I have already found today . . . she was blameless in this situation."[4] (Tr. Master's Oral Decision, Plaintiffs' Ex. C at 41.) The Rhode Island Supreme Court, focusing on the relative earning capacity and assets of the parties, stated, "[i]n the special circumstances of this case, we believe that some award of counsel fee was within the discretion of the general master." (R.I. Supreme Court Decision, *Gibbons v. Gibbons,* Plaintiffs' Ex. D at 4–5.) Looking at the financial picture of the parties, as did the Supreme Court, and recognizing the need for legal representation by Mrs. Gibbons, we find the attorneys' fees[5] also to be in the nature of alimony and support, and therefore nondischargeable. *See In re Michaels,* Bankr.L. Reports ¶ 75,-390, 81,597 (Bankr.D.Mass.1993).

Enter Judgment consistent with this opinion.

---

4. Master O'Brien found that Mr. Gibbons' extramarital affair beginning in early 1986 caused the breakdown of the marriage. (Tr. Master's Oral Decision, Plaintiffs' Ex. C at 28–29.)

5. As determined by the Rhode Island Supreme Court, in the amount of $35,000.