**In re Edward L. SWECK, Debtor.**

**Constance A. SWECK, Plaintiff,**

v.

**Edward L. SWECK, Defendant.**

**Bankruptcy No. 93–12222.
Adv. No. 93–1131.**

United States Bankruptcy Court,
D. Rhode Island.

Oct. 19, 1994.

Russell D. Raskin, Raskin & Berman, Providence, RI, for debtor/defendant.

Robert S. Parker, Skolnik, McIntyre & Tate Esquires, Ltd., Providence, RI, for plaintiff.

ARTHUR N. VOTOLATO, Bankruptcy Judge.

The Plaintiff, who is the Debtor's former wife, requests a determination that certain obligations of the Debtor imposed under the terms of a Decision and Order of the Washington County Family Court, are nondischargeable under 11 U.S.C. § 523(a)(5), on the ground that said obligations are in the nature of alimony or support. The matter was taken under advisement on the written submissions of the parties.

### FACTUAL BACKGROUND

Constance and Edward Sweck were married in September 1954. On July 26, 1990, Mrs. Sweck initiated divorce proceedings on the ground of irreconcilable differences, and on January 29, 1992, General Master John O'Brien of the Rhode Island Family Court granted the parties a final divorce, ending a marriage of 37 years. In his decision Master O'Brien cited Mr. Sweck's abuse of alcohol, infidelity, and physical abuse of Constance Sweck as reasons for the irremediable breakdown of the marriage, and he awarded Mrs. Sweck eighty percent of the marital assets, as follows:

1) Title to the marital domicile in North Kingstown, Rhode Island;

2) the Sanibel Island time share;

3) her Keough Plan with an approximate value of $48,000;

4) the cash surrender value of Mr. Sweck's life insurance policy, then valued at $10,-532; and

5) one-half of Mr. Sweck's Marshall's pension plan valued at $36,235.

The Court also ordered that Mr. Sweck:

1) Pay $200 per week as alimony to Mrs. Sweck for six years;

2) Maintain health insurance coverage, including eye care and dental coverage, until Mrs. Sweck's death or remarriage;

3) Pay the mortgage on the marital domicile for a period of six years;

4) Pay Mrs. Sweck's attorney fees, up to $18,972;

5) Retain Mrs. Sweck as the irrevocable beneficiary on his life insurance policy provided by his employer; and that

6) Mrs. Sweck convey all of her interest in the Egg Harbor yacht to Mr. Sweck, subject to the existing indebtedness, and that Mr. Sweck hold Mrs. Sweck harmless on any claims arising in connection therewith.

Mr. Sweck appealed the Family Court Order to the Rhode Island Supreme Court, and the Supreme Court dismissed the appeal. *See Sweck v. Sweck,* 627 A.2d 329 (R.I.1993). On July 19, 1993, the Swecks entered into a consent agreement modifying some of the provisions of the Family Court Order, as follows:

1) Mr. Sweck would cash in the IRA awarded to him by the Family Court and pay that sum to Mrs. Sweck's attorneys in partial satisfaction of his obligation to pay her attorneys' fees. The value of his IRA was approximately $8,000.

2) Mr. Sweck would cash in his life insurance policy and pay the proceeds to Mrs. Sweck's attorneys. The cash surrender value of the policy was approximately $11,500, and this payment would fully satisfy his obligation under the Family Court Order to pay attorneys' fees.

3) In lieu of Mrs. Sweck receiving the cash surrender value of the life insurance policy awarded to her by the Family Court, Mr. Sweck would pay her $200 per month, plus any bonuses received from his employer, until $11,500 is paid to Mrs. Sweck.

On August 20, 1993, Mr. Sweck filed a Chapter 7 bankruptcy petition in this Court. He concedes that the obligations to pay $200 per week in alimony, health insurance, and the mortgage on the marital domicile are all in the nature of alimony and/or support, and not dischargeable. Additionally, the Debtor has elected not to dispute the awards to his former wife of the Sanibel time share or the marital domicile. The Debtor does contend, however, that the remaining assets[1] granted to Mrs. Sweck are not in the nature of alimony or support, and therefore are dischargeable.

## DISCUSSION

Section 523(a)(5) excepts from discharge any debt

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, ... or property settlement agreement, but not to the extent that—

.    .    .    .    .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5).

A debt is considered "in the nature of alimony, maintenance, or support" if at the time of the divorce decree or settlement provision it functioned as support. *See Bonheur v. Bonheur (In re Bonheur),* 148 B.R. 379, 381 (Bankr.E.D.N.Y.1992). Section 523(a)(5)(B) of the Bankruptcy Code requires this Court to determine the nature of the debts, regardless of the labels placed on them by the parties or the family court. *Id. See also Young v. Young (In re Young),* 72 B.R. 450, 452 (Bankr.D.R.I.1987); *Parisi v. White (In re White)* 26 B.R. 572, 574 (Bankr. D.R.I.1983). "The Bankruptcy Court ... is required to look beyond the designation and

---

**1.** These assets consist of: (1) the cash surrender value of Mr. Sweck's life insurance policy; (2) ½ of Mr. Sweck's interest in his Marshall Pension Plan; (3) the payment of Mrs. Sweck's attorney fees; (4) the hold harmless agreement regarding the yacht mortgage; and (5) the retention of Mrs. Sweck as an irrevocable beneficiary on the life insurance policy from Mr. Sweck's employer.

make an independent determination whether the obligation is the result of a division of marital property, or whether it was intended to be in the nature of alimony or support." *Gibbons v. Gibbons (In re Gibbons)*, 160 B.R. 473, 475 (Bankr.D.R.I.1993).

In determining whether a debt is in the nature of alimony or support, as opposed to property settlement, in the past we have taken, inter alia, the following factors into consideration:

1) the nature of the obligation assumed (whether for necessaries or luxuries);

2) the type of payment (lump sum or installment);

3) the length of the marriage;

4) provision for children of the marriage;

5) the relative earning power of the spouses;

6) the adequacy of support without the debt assumption; and

7) the understanding of the parties concerning the agreement.

*Gibbons*, 160 B.R. at 475; *McCartin v. McCartin (In re McCartin)*, 145 B.R. 118, 119 (Bankr.D.R.I.1992); *Wheeler v. Wheeler (In re Wheeler)*, 122 B.R. 645, 647–48 (Bankr. D.R.I.1991). We have also held previously that when dealing with a contested divorce, with no settlement agreement to interpret, as in the instant case, the inquiry is focused on the intent of the Family Court in making its award.[2] *Gibbons*, 160 B.R. at 475.

The party objecting to the discharge of a particular debt has the burden of proving nondischargeability. *In re Gianakas*, 917 F.2d 759, 761 (3rd Cir.1990). The Debtor here argues, incorrectly, that the clear and convincing standard of proof should apply in a case under § 523(a)(5). In *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991), the United States Supreme Court held "that the standard of proof for the dischargeability *exceptions in 11 U.S.C. 523(a)* is the ordinary

preponderance-of-the-evidence standard." (Emphasis added). We have also held that the *preponderance of the evidence* standard applies *to all* actions commenced under § 523(a). *In re Monahan*, 125 B.R. 697, 699 (Bankr.D.R.I.1991).

After consideration of the Family Court order in its entirety, together with the factors discussed above, the memoranda of the parties, and the applicable law, we find that the Debtor's obligation to pay the Plaintiff eighty percent of the marital assets, to hold her harmless on the debt encumbering the yacht, to retain his former wife as an irrevocable beneficiary on the life insurance policy provided by his employer, and to pay her legal expenses in the amount of $18,972, are all in the nature of alimony or support, and are therefore nondischargeable.

Weighing most heavily herein is the large disparity in earning capacity between the parties. *See Gibbons*, 160 B.R. at 476. "The fact that one spouse ... was employed in a less remunerative position than the other spouse are aspects of the parties' financial circumstances at the time the obligation was fixed which shed light on the inquiry into the nature of the obligation as support." *In re Gianakas*, 917 F.2d at 763. Master O'Brien found that Mrs. Sweck "received income from sundry sales, commissions, and rentals income ... approximating some $8,000 in 1991" (Tr. Master's Oral Decision, Plaintiff's Ex. 1 at 15), while the Debtor earned $77,256. In addition, Master O'Brien found that the Plaintiff's real estate business was not profitable, given the market and national economy, and "for purposes of sale or worth, the court finds its value to be zero." (Tr. Master's Oral Decision, Plaintiff's Ex. 1 at 15–16.) This large disparity in the earning capacity and relative net worth of the parties clearly supports the conclusion that Master O'Brien intended the award of eighty percent of the marital assets to serve as support or alimony.[3]

---

**2.** While the parties did have an agreement that modified the Family Court Order, we find that the modifications did not substantively change Master O'Brien's Order. Accordingly, we conclude that the parties' intent is not relevant in the instant case, and that we are still looking to the intent of the Family Court, rather than the intent of parties to a voluntary contract.

**3.** The Plaintiff is fifty-six, and we believe that her employability or potential for reentering the work force is limited and/or questionable. Con-

■ Mr. Sweck's life insurance will provide the Plaintiff with the payment of one year's salary upon his death, and is not an insignificant asset.[4] Because of Mrs. Sweck's age, her continuing need for support in the future, and her questionable and doubtful employability going forward, we find that Master O'Brien was thinking *only* in terms of support when making the award.

■ In examining the Debtor's obligation to hold Mrs. Sweck harmless on the $170,000 mortgage encumbering his yacht, we find that this obligation is also nondischargeable under § 523(a)(5). Master O'Brien ordered that the "counterclaimant is awarded all right, title and interest in his 37 foot Egg Harbor [yacht] value equity $7,400.... All necessary transfers to be completed by the parties relative to deeds, mortgages, etc., in order that the other person be held harmless thereon." (Tr. Master's Oral Decision, Plaintiff's Ex. 1 at 15.) Marital debts assigned to a debtor "in a divorce decree with a concomitant 'hold harmless' agreement in favor of the former spouse can be a nondischargeable obligation if it is actually intended as maintenance or support for a former spouse ... of the Debtor." *In re Young,* 72 B.R. at 452; *see also Quinn v. Quinn, (In re Quinn),* 44 B.R. 622, 624 (Bankr.W.D.Mo.1984); *Rich v. Rich, (In re Rich),* 40 B.R. 92 (Bankr. D.Mass.1984). Given the Plaintiff's 1991 income of $8,000, and the fact that her real estate business has no value, we cannot conclude that Master O'Brien intended for the Plaintiff to *ever* have to make payments on the yacht mortgage. He awarded the Plaintiff alimony payments of $800 per month. The yacht mortgage alone is $1,776 per month, over twice that amount. In the instant case, it is clear and inescapable that the hold harmless order was intended *only* as support or maintenance for the Plaintiff. *See In re Burns,* 149 B.R. 578, 582 (Bankr. E.D.Mo.1993) (a debt arising from debtor's obligation under a divorce decree to hold his former wife harmless for payment of certain debts was held to be nondischargeable because disparity in earning potentials and incomes of each party at time of dissolution supported conclusion that debt served as maintenance or support). *See also In re Gibbons,* 160 B.R. 473; *In re Johnson,* 156 B.R. 338 (Bankr.M.D.Fla.1993); *In re Ellis,* 149 B.R. 927 (Bankr.E.D.Mo.1993).

■ Finally, the Family Court ordered Mr. Sweck to pay his former wife's legal fees in the amount of $18,972. In making this award, the Court was mindful that Mrs. Sweck had to file the divorce action to protect herself, and that requiring her to pay the legal bill would divert other assets awarded to her that are necessary for her subsistence. Master O'Brien stated that "[t]he Court finds plaintiff would not be able to sustain herself without dissipating that which has been awarded to her.... The Court further finds that the counterclaimant has an ability to make said payments not only from his salary but from those bonuses which have been received and more than likely will be received in the future twice a year...." (Tr. Master's Oral Decision, Plaintiff's Ex. 1 at 18–19.) In comparing the financial circumstance of the parties, as did the General Master, we find that these fees are in the nature of alimony and support, and are therefore nondischargeable.[5] *See In re*

---

sequently, it is reasonable to expect that her earning capacity will not improve with the passage of time. *See Gibbons,* 160 B.R. at 476.

4. As stated, at the time of the divorce, Mr. Sweck's salary exceeded $77,000.

5. On the eve of filing this decision, we received a tardy memorandum from the Debtor urging us to follow the holding in *Cooper v. Garcia (In re Garcia),* 174 B.R. 529 (Bankr.W.D.Mo.1994). The *Garcia* Court held that a family court order requiring a debtor to pay attorney fees directly to the attorney rather than to the former spouse is dischargeable because the obligation was not a debt to a spouse as required under 11 U.S.C. § 523(a)(5). In addressing this question in Rhode Island, we have consistently held that "[w]e are in agreement with those courts which hold that an award in the nature of alimony, maintenance or support is nondischargeable regardless of whether it is payable directly to the attorney or to the spouse, as attorney fees," and therefore decline to follow *Garcia. In re Whitman,* 29 B.R. 362, 364 (Bankr.D.R.I.1983); *see also In re Michaels,* 157 B.R. 190, 193 (Bankr. D.Mass.1993). Counsel's failure to include and reference these contrary cases in his memorandum could be a violation of Rule 3.3(a)(3) of the Rules of Professional Conduct, and he is advised to exercise more care in the future.

*Sinewitz,* 166 B.R. 786, 788 (Bankr.D.Mass. 1994); *In re Gibbons,* 160 B.R. 473; *In re Michaels,* 157 B.R. 190, 196 (Bankr.D.Mass. 1993); *In re Boggess,* 105 B.R. 470, 473 (Bankr.S.D.Ill.1989) (holding that when state law makes an award of attorney's fees based on the need of an entitled party, the award is in the nature of support and not dischargeable).

Enter Judgment consistent with this opinion.