In re Frank N. ZAINO, Debtor.

Frank N. Zaino, Plaintiff,

v.

Rose Marie Zaino, Defendant.

Bankruptcy No. 03–11566–ANV.
Adversary Nos. 03–1059,
03–1063, 03–1064.

United States Bankruptcy Court,
D. Rhode Island.

Oct. 20, 2004.

Christopher Lefebvre, Law Office Of Claude Lefebvre & Sons, Pawtucket, RI, for Debtor.

# MEMORANDUM OF DECISION REGARDING COMPLAINTS OBJECTING TO DISCHARGEABILITY OF A DEBT

WILLIAM C. HILLMAN, Bankruptcy Judge.

## I. *Introduction*

Frank N. Zaino (the "Plaintiff") and Rose Marie Zaino (the "Defendant") each filed complaints to determine the dischargeability of a judgment debt which the Plaintiff owes the Defendant as a result of the Plaintiff's failure to fully disclose his assets in an earlier divorce proceeding and his fraudulent actions in the later action to re-open the divorce. Divorce counsel to the Defendant filed a complaint to determine the dischargeability of the debt which he was awarded in the same action. After a brief trial, I took the matter under advisement. The following constitutes my findings of fact and conclusions of law.

## II. *Background*

The facts in this case are not in dispute. The Defendant and Plaintiff were married in 1956. In the Decision Pending Entry of Final Judgment ("Divorce Decision"), dated November 29, 1990, the Rhode Island Family Court granted the Defendant a divorce on the grounds of irreconcilable differences. The Marital Settlement Agreement ("MSA"), dated November 15, 1990, was approved and incorporated by reference but was not merged into the Decision. In the Divorce Decision, the parties were permitted to waive alimony permanently.

In the MSA, the Defendant agreed to "accept the provisions herein made for her in full satisfaction of her right to the property of the respective parties hereto and in full satisfaction of her right to support and

maintenance, and in consideration thereof, waives alimony permanently." MSA, p. 2. The Plaintiff made the same representation. *Id.* at 3. The parties agreed that they had equitably divided their real and personal property. The Plaintiff was to retain sole ownership of his business. *Id.* at 5. The agreement further provided that in lieu of alimony, the Plaintiff would pay to the Defendant $208,000 by means of a $1,000 per week payment for four years. *Id.* The Plaintiff was also required to provide medical coverage for the Defendant for four years. *Id.* The MSA provided that the payments "shall be construed as payments in the nature of a MSA and not as support or alimony." *Id.* at 7. The parties agreed that they had made full disclosure of all of their assets. *Id.* The parties also agreed that if one of the parties were required to remedy a breach of the agreement, the breaching party would be liable for counsel fees. The agreement explained that the parties had three adult children. In 1991, the Family Court issued the Final Judgment.

In 1997, the Defendant sought redress from the Family Court on the grounds that the Plaintiff had engaged in fraudulent conduct during the divorce proceedings as a result of having failed to disclose substantial income. In the decision it issued in 1999 (the "Family Court Decision"), the court found Plaintiff lacked credibility and had attempted fraud and deceit during these subsequent proceedings. Family Court Decision, p. 1. The court further found that during their divorce proceedings, the Plaintiff's total undisclosed personal income was $748,090.00, *id.* at 2, and awarded the Defendant $590,233. This award included the Defen-

dant's 80% share of the hidden income, interest and sanctions. *Id.* at 3. The court also ruled that Defendant's counsel was entitled to his fees as well, given the protracted litigation due to the Plaintiff's conduct. *Id.* The court made additional findings and rulings with respect to the Plaintiff's contumacious behavior. The Family Court explained that "[a]ll of the $590,223.00 is intended to be equitable distribution to the Plaintiff herein." Family Court Decision, p. 4.

In March of 2003, the Supreme Court of Rhode Island issued a decision in which it provided more of the factual background of the case (the "Supreme Court Decision"). *Zaino v. Zaino,* 818 A.2d 630 (R.I. 2003). The court explained that when the Plaintiff was cooperating under a grant of immunity with respect to his business transactions with a former governor of Rhode Island, "it became apparent that as part of his allegedly illegal dealings [the Plaintiff] had failed to disclose to [the Defendant] and the Internal Revenue Service the full extent of his income and assets during his marriage." 818 A.2d at 634.

The Supreme Court explained that what the Family Court had accomplished procedurally was to reopen the divorce judgment and settlement agreement, *Id.*[1] The Plaintiff argued to the Supreme Court that the Family Court was in error in so proceeding. *Id.* at 635. The Supreme Court disagreed, concluding that "[b]ased upon our review of the evidence in this case, including Plaintiff's appalling behavior, we are satisfied that the final divorce judgment and settlement agreement were properly before the Family Court." *Id.* at

---

1. The Supreme Court found that as part of their divorce settlement, the Plaintiff and Defendant had divided certain assets and additionally "in lieu of alimony or 'support,' and apparently in order for [the Defendant] to gain tax benefits by its classification, Plaintiff agreed to pay [her] a 'marital settlement agreement payment' of $208,000, $1,000 per week for the next four years." Supreme Court Decision, p. 4

636. As grounds, the Supreme Court wrote

Despite the original case caption and number, this claim for damages, arising from fraudulent misrepresentations of Plaintiff's assets and income, was independent of the original divorce proceeding. The trial court retained the inherent power to adjudicate [the Defendant's] claim of fraud notwithstanding the passage of six years.... Additionally, independent actions "are separate and distinct avenues of relief * * * not governed by the time limit imposed upon 60(b) motions" ... The claim for relief instituted by [the Defendant] was not a Rule 60(b) motion, but was an independent action to reopen the judgment and was not inconsistent with the Rules of Procedure for Domestic Relations. Clearly, there was demonstrated evidence of fraud committed during the settlement process sufficient to warrant the court to entertain this claim....

This Court has had occasion to address the significance of a non-merged property settlement agreement in the context of a motion to modify its provisions. On those occasions we have adhered "to hundreds of years of contract theory" and declared that property settlement agreements that are incorporated by reference, but not merged into the final divorce decree, retain the characteristics of a contract.... If it is later determined that the agreement was reached through fraud and trickery, as in any other contract claim, a party may sue for damages in an action for deceit or may rescind the contract and recover what he has paid under it.... Accordingly, we reject Plaintiff's argument that the Family Court hearing justice lacked authority to reopen the final judgment of divorce and the property settlement

agreement based upon [the Defendant's] allegations of fraud.

*Id.* at 638–39.

In response to the Plaintiff's appeal of the division of his hidden income, the Supreme Court ruled that "[b]ased upon the terms of the original marital settlement agreement providing for an 80 percent allocation to Rosemarie and clear evidence of Plaintiff's wrongful conduct, the award of 80 percent of the undisclosed assets and net income is both fair and equitable." *Id.* at 639. The 80%, it wrote, was consistent with the parties' original intent. *Id.* The Supreme Court overruled the arguments that the award should not have come from the Plaintiff's income and that no attorney's fees should have been awarded. *Id.* The Supreme Court amended the judgment with respect to discovery sanctions.

In June of 2003, the Plaintiff filed for relief under Chapter 7 of the United States Bankruptcy Code. The Plaintiff listed the Defendant as holding an unsecured non-priority claim in the amount of $539,483 and her counsel holding a similar claim in the amount of $61,900. Thereafter, the parties filed their adversary proceedings. The Defendant filed her complaint on the grounds that the Debt is dischargeable under 11 U.S.C. § 523(a)(5). The Plaintiff filed his complaint against the Defendant seeking to discharge the Family Court debt under the "relevant portions of the bankruptcy code contained in 11 U.S.C. § 523." Complaint to Determine Dischargeability of Debt, Adversary Proceeding No. 03–1059. The Defendant's divorce attorney filed an adversary proceeding against the Plaintiff asserting that the legal fees which the Family Court awarded, and the Supreme Court of Rhode Island affirmed, should be declared nondischargeable under 11 U.S.C. § 523(a)(5).

The parties filed a Joint Pre–Trial Order in which they recited the forgoing facts

and agreed to have the exhibits included in their pleadings admitted as full exhibits. They wrote that the legal issue to be decided was whether the obligation to the Defendant and her counsel should be ruled nondischargeable under 11 U.S.C. § 523(a)(5). There is no representation in this order that it supersedes any prior filed documents. On the eve of trial, the Plaintiff filed a motion for judgment on the pleadings on the grounds that nothing in the Family Court or Supreme Court Decisions suggested that the award in favor of the Defendant was non-dischargeable alimony, maintenance or support. As the motion was filed well after the expiration of the deadline for filing dispositive motions, I denied the motion.

At the trial on these consolidated adversary proceedings, counsel for the Plaintiff and the Defendant explained that the facts were not at issue and, in place of testimony, they each offered brief arguments. Counsel for the Plaintiff began by explaining that he was not prepared to argue that the facts in the Family Court or Supreme Court Decisions were in error. He stated that the Family Court recognized that the matter was based upon fraud which, he explained, was the rubric under which the Rhode Island Supreme Court decided the matter. The sole count before this Court, he argued, was whether a debt which arose several years after a divorce, could be considered a debt for alimony, support or maintenance. As first, his client had fully complied with the divorce judgment and Marital Settlement Agreement and second, the present debt arose out of the Defendant's complaint for fraud, counsel for the Plaintiff argued that the Defendant was not entitled to any relief under 11 U.S.C. § 523(a)(5). Counsel went on to explain that the Defendant likely would

have been entitled to summary judgment had she filed a complaint under subsection (a)(2) of § 523.

Counsel for the Defendant began his argument by citing the following quote in the Supreme Court Decision: "One who has been induced to enter into a contract based upon a fraudulent misrepresentation is not bound by its terms." 818 A.2d. at 636 (citing *Bjartmarz v. Pinnacle Real Estate Tax Service,* 771 A.2d 124, 127 (R.I. 2001)). Counsel urged that this case is not as simple as counsel for the Plaintiff suggested. He explained that the MSA was separate from the divorce judgment and that the because the original premise on which the parties entered into the agreement, full disclosure of assets, was false, an inequity or breach resulted and the debt arising from that breach should be held nondischargeable.[2]

## III. *Discussion*

### A. **Whether the Defendant is Entitled to Judgment Under 11 U.S.C. § 523(a)(5)**

A debt for alimony, support or maintenance "in connection with a separation agreement, divorce decree or other order of a court of record, . . ." cannot be discharged. 11 U.S.C. § 523(a)(5). The Defendant must establish her case by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

The Plaintiff contends that the debt cannot be considered alimony, support or maintenance because the Supreme Court of Rhode Island deemed the Family Court action to be one for damages as a result of fraud and not a debt which stemmed from the divorce. The problem with this analy-

---

**2.** At trial, the parties offered to enter into evidence the MSA and the Final Judgment. I declined the offer but later sought the documents. The parties willingly provided them.

sis is that the reference to an independent action was to an "independent action to reopen the judgment . . ." *Id.* at 636. The court explained that, "we reject defendant's argument that the Family Court hearing justice lacked authority to reopen the final judgment of divorce and the property settlement agreement based upon Rosemarie's allegations of fraud." *Id.* at 638.

The effect of the claim for fraud in the inducement was to re-open and modify the MSA to include income which was fraudulently omitted at the time the parties signed the agreement. The award was determined based upon the parties original intent when signing the Marital Separation Agreement. What the Supreme Court of Rhode Island accomplished in not applying Rule 60(b)(3) of the Family Court Rules of Procedure for Domestic Relations (providing relief from fraud not more than one year after entry of judgment), was to provide relief from the fraud by modifying the MSA with respect to their assets. I conclude that this is a debt which arose from a separation agreement and certainly an order that arose from a court of record. This conclusion is consistent with and supported by the First Circuit's liberal interpretation of the language of subsection (a)(5). *Shine v. Shine*, 802 F.2d 583 (1st Cir.1986)

▮▮▮ The remaining question is whether the debt is one for alimony, support or maintenance. A bankruptcy court is not bound by the labels used in the state court but rather is able to make an independent decision. *Id.* at 588. There is ample Rhode Island bankruptcy case law which addresses how a bankruptcy court may determine whether a debt is one for alimony, support or maintenance. *See e.g. Paddock v. Choquette (In re Choquette)*, 276 B.R. 327 (Bankr.D.R.I.2002); *Dressler v. Dressler (In re Dressler)*, 194 B.R. 290,

296 (Bankr.D.R.I.1996); *Sweck v. Sweck (In re Sweck)*, 174 B.R. 532 (Bankr.D.R.I.1994); *Gibbons v. Gibbons (In re Gibbons)*, 160 B.R. 473, 475 (Bankr.D.R.I.1993), *aff'd*, 1995 WL 17017348 (1995).

In *Choquette,* Judge Votolato ruled that the debt that arose from the property settlement agreement was dischargeable. In making that determination, he considered that the agreement contained a separate provision for the children, there was no significant difference in income and the lump sum payment from the debtor to his ex-wife could be paid at any time during a three year period. The amount of the debt was one-half of the equity in the marital home and the ex-wife testified that she intended to use the funds to purchase a home. All of these factors, he concluded, had "the earmarks of a property settlement . . ." *Id.* at 330.

In *Dressler,* Judge Haines, sitting by designation, was asked to consider the dischargeability of divorce obligations under 11 U.S.C. §§ 523(a)(5) and (a)(15). 194 B.R. 290, 293. He agreed that under subsection (a)(5), substance must prevail over form. *Id.* at 295 (citing *Warren v. Warren (In re Warren)*, 160 B.R. 395, 398 (Bankr. D.Me.1993)). He recognized that there are many multi-factor tests and that "their essence is to ascertain and appreciate the dissolution dynamics that led to the obligations' creation and how these obligations functioned under extant circumstances." *Id.* He concluded that "[i]n light of the disparity of incomes at divorce, comparative work histories and prospects, the length of the marriage, the parties' consistent tax treatment of the payments and, most importantly, their conceded purpose (to provide post-divorce support for Fredda), I conclude that, by any test, [the] alimony obligation is . . . alimony." *Id.* at 297.

In *Gibbons,* Judge Votolato explained that the parties had been married for seventeen years, had five minor children and the wife stopped working after the birth of the third. 160 B.R. at 474. The Family Court ordered the debtor/husband to pay the wife child support, provide health insurance and transfer seventy percent of the martial assets to the wife in lieu of alimony. *Id.* After the husband filed for relief, Judge Votolato applied a seven factor test to determine whether the debt resulting from the division of assets was dischargeable under § 523(a)(5). He recognized that some factors are given more weight than others in certain cases but that the intent of the parties was the crucial factor. *Id.* at 475. The factors which weighed in favor of declaring the debt nondischargeable were the disparity in income and the wife's need for support as evidenced by the uneven division of assets. *Id.* at 476.

On appeal, the district court discussed the various factors which a court can apply to make a determination as to whether certain debts are nondischargeable within the parameters of the statute. *Gibbons v. Gibbons (In re Gibbons),* 1995 WL 17017348 *1 (D.R.I.1995). The court concluded

> In this case, the record plainly supports the Bankruptcy Court's finding. As the Bankruptcy Judge observed, the award of marital assets was made "in lieu of alimony." Under these circumstances, it appears obvious that those words signified the master's intent that the property serve the purpose of alimony by providing for Ms. Gibbons' future support. Thus despite the fact that the master found it "ludicrous" to expect that Ms. Gibbons had any prospect of becoming "gainfully employed in the near future," no other provision was made for her support. Furthermore, it is equally clear that the 70%–30% alloca-

tion was not based on a determination that Ms. Gibbons's contributions accounted for 70% of the value of the marital assets. The allocation can be explained only as an effort to provide for Ms. Gibbons's support.

> The mere fact that Dr. Gibbons is not relieved of his obligation in the event Ms. Gibbons dies or remarries does not alter the nature of the payment. In this case, there is no need for a termination provision. Rather than requiring fixed periodic payments for an indeterminate period of time, the master sought to give Ms. Gibbons what amounted to a lump sum that would provide for her future support. Consequently, the nature of the award is not affected by the fact that Dr. Gibbons elected to pay the balance in installments over a five year terms.

*Id.* at *3.

The debt in this case is part and parcel of the division set forth in the MSA. At the time of the divorce, the parties were married for thirty-four years. The MSA contains a reference to the Plaintiff's employment but contains no reference to that of the Defendant. In the Supreme Court Decision, the court described the Defendant receiving "in lieu of alimony or 'support,' and apparently in order for Rosemarie to gain tax benefits by its classification, [the Plaintiff] agreed to pay [the Defendant] a 'marital settlement agreement payment' of $208,000, $1,000 per week for the next four years." 818 A.2d at 633. It affirmed the division of the undisclosed income by the same percentage as the division in the MSA, 80% to the Defendant and 20% to the Plaintiff, as such a division was consistent with the original intent of the parties. These facts are so closely akin to those in *Gibbons,* that the same outcome is warranted. I conclude that the debt which the Plaintiff

owes the Defendant is nondischargeable. Further, the debt which he owes her counsel for pursuing the underlying matter is likewise nondischargeable. *Macy v. Macy*, 114 F.3d 1 (1st Cir.1997).[3]

### B. Whether the Court Can Enter Judgment Under 11 U.S.C. § 523(a)(2)

Had I not concluded the forgoing, the Plaintiff would still not be free of this debt. At the trial, Debtor's counsel freely admitted that the Plaintiff would have survived a motion for summary judgment if the Defendant's complaint included a count under 11 U.S.C. § 523(a)(2)(A).[4] The Defendant did not attempt at any time to amend her complaint to include this count.

The question becomes whether I can *sua sponte* amend the complaint to include a count under subsection (a)(2)(A). Judge Hardin did exactly that in *Sandak v. Dobrayel (In re Dobrayel)*, 287 B.R. 3 (Bankr.S.D.N.Y.2002). In that case, a dentist sued the contractor/debtor under subsection § 523(a)(2) for failing to complete the renovation of the dentist's office. Although not pled in the complaint, Judge Hardin concluded that the debtor's failure to pay three subcontractors constituted fraud or defalcation while acting in a fiduciary duty. 287 B.R. at 24. As grounds for such a conclusion, Judge Hardin wrote:

> While subsection (4) of Section 523(a) was not pleaded by [the dentist], it is appropriate for the Court to grant relief in favor of [the dentist] where the facts and the law so provide. Although Plaintiff seeks non-dischargeability only un-

der Section 523(a)(2), the Court will sua sponte examine non-dischargeability under Section 523(a)(4) without a formal amendment of the complaint because "all of the material facts" necessary for non-dischargeability under subsection (4) have been pleaded in the complaint and proven at trail. *In re Soliz*, 201 B.R. [363] at 370 [(Bankr.S.D.N.Y.1996)] ("Since all of the material facts which form the basis for non-dischargeability are pleaded in the complaint, an invocation of a different statute than that mentioned in the complaint does not constitute an amendment of the complaint"); *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985) ("it is appropriate for [the Court] to . . . decide the legal issues without first insisting that . . . a formal amendment be filed; this is because we regard the record as plainly identifying petitioners' claim for damages on [a different legal theory]");

> . . .

> The Court's sua sponte review under a different statute is consistent with the liberal scheme of Federal Rules of Civil Procedure with respect to pleading requirements. [footnote omitted]. Under the Federal Rules of Civil Procedure, "the question is not how plaintiffs characterized the action, but whether plaintiffs are entitled to relief." . . .

> In determining whether the pleadings should conform to the proof, the critical issue is whether prejudice on the part of Plaintiff would result.

*Id.* at 19–20.

Judge Hardin found further support in what he described as the liberal attitude

---

3. Judgment will enter in favor of the Defendant with respect to the Plaintiff's adversary proceeding against her as he neither explained the subsection under which he was proceeding or pursued his claim at trial.

4. That subsection provides that a debtor cannot discharge a debt

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (A) false pretenses, a false representation, or actual fraud

. . .

11 U.S.C. § 523(a)(2)(A).

towards pleadings in Federal Rules of Civil Procedure 8, 15(b) and 54(c). *Id.* at 20. He held that the pleadings in the case could conform to the proof as long as the plaintiff would not be prejudiced. *Id.* A change in theory, he ruled, was not prejudicial. *Id.* at 21. Because the debtor did not pay his subcontractors the trust funds which the debtor had received from the dentist, Judge Hardin ruled that the debtor had engaged in a defalcation while acting in a fiduciary capacity. *Id.* at 24.

The First Circuit has addressed amendment of a complaint applying the same civil procedure rules, albeit not in a nondischargeability action. *See Rodriguez v. Doral Mtg. Corp.*, 57 F.3d 1168 (1st Cir. 1995). In that case, the court had to consider a judgment entered against the defendant based upon a statute that was neither plead or argued at trial. *Id.* at 1170.

With respect to Fed. Rules Civ. P. 8(a),[5] the court wrote that "while courts should construe pleadings generously, paying more attention to substance than to form, they must always exhibit awareness of the Plaintiff's inalienable right to know in advance the nature of the cause of action being asserted against him." *Id.* at 1171. The court further explained that a "fundamental purpose of pleadings ... is to afford the opposing party fair notice of the claims asserted against him and the grounds on which those claims rest." *Id.* Judge Selya concluded that the defendant was not afforded proper notice or an opportunity to meaningfully defend against

the statute upon which the judgment was based. *Id.* at 1172. The Plaintiff in this case, however, would not have to "forage in the forests of facts ... for every legal theory that [this court] may some day find lurking in the penumbra of the record." *Id.* In this case, the Plaintiff brought a nondischargeability complaint against the Defendant without specifying the subsection of § 523 upon which he was proceeding. He recognized at trial that he would likely not survive a motion for summary judgment for a count under § 523(a)(2). Such a judgment would rest upon facts which were already made part of the record and which the Plaintiff recognized needed no further factual inquiry. Under the forgoing First Circuit precedent, Fed. Rules of Civ. P. 8(a) is not an impediment to this Court entering judgment under 11 U.S.C. § 523(a)(2).

In *Rodriguez*, Judge Selya secondly considered the application of Fed.R.Civ.P. 15(b).[6] He explained that under that rule, implied consent to the litigation of a issue not set forth in the pleadings occurs when either the claims is raised out side of the pleadings and the opposing party acquiesces by their silence or by their inclusion of the issue a the trial. *Id.* at 1172. Implied consent may also arise when the opposing party does not object to the introduction of evidence relating solely to the newly raised issue. *Id.* Judge Selya ruled that in the case before him, the first factor for implied consent had not been met as there was no meritorious mention

---

**5.** This rule requires that a complaint contain "a short and plain statement of the claims showing that the pleader is entitled to relief ..." and that the pleadings "shall be so construed as to do substantial justice."

**6.** The rule provides

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects

as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues ...

of the statute outside of the complaint. *Id.* He also concluded that the plaintiff did not offer any evidence that was related solely to the objectionable statute. *Id.* at 1173. He explained that "the root purpose of the rule is to combat 'the tyranny of formalism, ... it cannot be so liberally construed as to empty Rule 8(a) of all meaning.'" In a footnote, Judge Selya went on to explain

> We note that, even if we could detect some indicium of consent, access to the unguent of Rule 15(b) might well be blocked on another ground. One limit on the operation of Rule 15(b) is that the opposing party not be prejudiced.... Here, [the defendant] had no advance warning of the ... claim and no meaningful opportunity to defend against it.

*Id.*

In this case, the Plaintiff, who is a defendant in one of the combined cases, raised the issue of nondischargeability based upon 11 U.S.C. § 523(a)(2). The Defendant, a Plaintiff in one of the combined cases, did not object to the issued being raised. The Plaintiff claimed that one of the sole documents upon which the parties were relying went only to the issue of the (a)(2) claim as he argued that it could not support a claim under 11 U.S.C. § 523(a)(5). The Plaintiff had ample warning of this claim against him by going so far as to recognize that he likely could not have survived a summary judgment motion based upon subsection (a)(2). There can be no prejudice against him as he recognized that but for the Defendant having failed to specify this subsection in her complaint, he probably would not have defended against her complaint. Moreover,

one wonders the purpose of his complaint if he thinks that the only grounds for denying dischargeability was under subsection (a)(2) and that a complaint under that subsection was quite strong. Based upon these unique set of facts, Judge Selya's analysis of Fed. R. of Civ. P. 15(a) would not prevent my ruling on a count under 11 U.S.C. § 523(a)(2)

Lastly, Judge Selya addressed Fed. R.Civ.P. 54(c).[7] *Id.* He would not grant the plaintiff relief based upon this rule because she had forgone the relief due to the failures in her pleadings and proof. *Id.* In this case, however, the Plaintiff recognized at trial that subsection (a)(2) of § 523 was the only grounds upon which the Defendant could have relied. He had his own complaint before the court which did not specify the subsection of the statute under which he was proceeding other than his statement at trial. The evidence, which if one were to extend his argument could only relate to this subsection. He was abundantly aware of the Supreme Court Decision which was replete with references to his fraudulent conduct. He recognized at trial that he would not defend against a complaint brought under this subsection and therefore that he would have not have offered any further evidence or argument against such a count. Therefore, Judge Selya's ruling with respect to this rule would not be an impediment to my ruling on 11 U.S.C. § 523(a)(2).

Rather, the forgoing rules support my entering a judgment against the Plaintiff under 11 U.S.C. § 523(a)(2).[8] Under Rule 15(a), the Plaintiff raised the issue of the

---

7. This rule provides that "every final judgment shall grant relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."

8. There is no concern that such an amendment would violate the deadline set forth in Fed. R. Bankr.P. 4007(c) as the amended count arises from the same conduct. *United States Postal Service v. Steinmeyer (In re Steinmeyer),* 274 B.R. 201, 205 (Bankr.D.S.C. 2001).

subsection at the trial of these combined adversary proceedings and the Defendant did not object. The Plaintiff essentially argued that one of the sole documents upon which this court would rely, the Supreme Court Decision, related only to a count under this subsection as there was no other subsection upon which relief could be granted. Under Rule 54(c), relief under this section is appropriate as the Plaintiff knew of the potential liability under the statute and recognized at trial that he could not defend against such a claim. The Supreme Court Decision leaves no doubt that the debt was a product of the Plaintiff's fraud. If the Plaintiff considered that relief under subsection (a)(2) was the only relief available to the Defendant and was a forgone conclusion, it is unclear why the Plaintiff brought his adversary proceeding. It appears that the Plaintiff's sole grounds for filing for relief under the Bankruptcy Code was to lie in wait in hope that the Defendant's lawyer might miss a beat allowing an otherwise clearly nondischargeable debt to be discharged.

Bankruptcy relief is for the honest but unfortunate debtor. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). This Debtor engaged in fraudulent conduct in his divorce proceedings. He engaged in criminal behavior with respect to his business dealings. When called upon to correct his lack of disclosure, he again engaged in fraudulent tactics to thwart the Defendant's efforts to receive the martial assets to which she was entitled. Based upon the egregious facts of this case and the Plaintiff's knowledge, representations and actions in this case, relief in the form a *sua sponte* judgment based upon 11 U.S.C. § 523(a)(2) would be amply supported. *See D. Federico Co., Inc. v. New Bedford Redevel. Auth.*, 723 F.2d 122, 126 (1st Cir.1983) (affirming bankruptcy court judgment entered on

theory not plead in complaint addressing contract dispute). *See also, Hibernia Nat'l Bank v. Perez*, 124 B.R. 704, 707–8 (E.D.La.1991) (affirming bankruptcy court judgment *sua sponte* adding count for denial of discharge); *Bahr v. Nett (In re Nett)*, 70 B.R. 868 (Bankr.W.D.Wis.1987) (denying discharge on grounds other than ones presented in complaint).

## IV. *Conclusion*

For the forgoing reasons, the Court concludes that the Plaintiff's debt to the Defendant is nondischargeable under 11 U.S.C. § 523(a)(5). The Court will enter a separate judgment awarding Defendant judgment in her complaint against the Plaintiff. Further, the court will enter judgment in favor of Defendant's counsel in counsel's adversary proceeding against the Plaintiff.