In re Alan James WHITE, Marlene Eleanor White, Debtors.

Irene (White) PARISI, Plaintiff.

v.

Alan James WHITE, Defendant.

Bankruptcy No. 8100767.
Adv. No. 810394.

United States Bankruptcy Court,
D. Rhode Island.

Jan. 24, 1983.

Robert M. Brennan, Providence, R.I., for plaintiff.

Richard S. Cardozo, Providence, R.I., for defendant.

## DECISION DETERMINING DEBT TO BE NONDISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(a)(5)

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on November 22, 1982 on the Plaintiff's Complaint objecting to the discharge of her former husband's debt to her of $7,226.41.[1] Although the Complaint asserts several grounds for finding the debt in question nondischargeable, the trial focused on a single issue: whether this debt was "in the nature of alimony, maintenance, or support" and therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(5).[2]

The Plaintiff, Irene Parisi, and the Debtor-Defendant, Alan J. White, were divorced pursuant to a decree of the Rhode Island Family Court on April 15, 1977. The final decree incorporates most of the provisions of an interlocutory order entered November 1, 1976. Paragraph 5 of both decrees reads as follows:

> Petitioner [Irene Parisi] permanently waives any claim to alimony from the Respondent [Alan J. White]. In consideration of said waiver, Petitioner shall be awarded exclusive title to the marital domicile on the date of the final decree of divorce. (Joint Exhibits 1 [Interlocutory Decree] and 2 [Final Decree])

Although it appears from paragraph 5 of the Family Court decree that the sole consideration for the Plaintiff's waiver of alimony was the Defendant's transfer of his half of the $11,000 equity in the marital domicile, the Plaintiff contends that paragraph 7 of the decree, in which the Defendant agreed to "keep current the loans from the Citizens Bank and Trust in the principal amount of Eight Thousand Dollars ($8,000.00) for which Respondent and Petitioner are currently jointly responsible," constitutes additional consideration for her waiver of alimony. She also contends that the intent of the parties must control, and that the intent of both spouses was that both the transfer of "exclusive title to the marital domicile" to the Plaintiff and Mr. White's promise to pay the loans secured by the $8,000 joint term-savings account, constituted alimony or the equivalent thereof.

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. 11 U.S.C. § 523(a)(5) provides as follows:
   § 523. *Exceptions to discharge.*
   (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

   .     .     .     .     .

   (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—
   (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or
   (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support. . . .

■ In determining whether a debt to a former spouse is in the nature of alimony, maintenance, or support, the Court must look behind the designation assigned by a state court, or by the parties themselves, as to whether or not a particular obligation was in the nature of alimony, or a property settlement, and to determine the true nature of such an obligation. In other words, it is not what the obligation is labeled that is significant, but what the obligation actually is.

*Singer v. Singer (In re Singer)*, 18 B.R. 782, 785 (Bkrtcy.S.D.Ohio 1982). *Accord, Hopkins v. Hopkins (In re Hopkins)*, 18 B.R. 309, 311 (Bkrtcy.D.R.I.1982); *Diers v. Diers (In re Diers)*, 7 B.R. 18, 20 (Bkrtcy.S.D.Ohio 1980). Furthermore, in characterizing an obligation as a property settlement or alimony, the intention of the parties is of paramount importance. *Hopkins v. Hopkins (In re Hopkins)*, 18 B.R. at 311. *See also Melichar v. Ost*, 661 F.2d 300, 303 (4th Cir.1981), *cert. denied*, 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 442 (1982); *Snyder v. Snyder (In re Snyder)*, 7 B.R. 147, 150 (W.D. Va.1980); 3 Collier on Bankruptcy ¶ 523.-15[3] (15th ed. 1981).

■ In the case at bar it is undisputed that prior to their divorce, Mr. White and Mrs. Parisi (Defendant and Plaintiff, respectively, in this case) deposited $8,000 in a joint five-year-term savings account. All or most of that fund came from the 1975 settlement of a claim resulting from an automobile accident in which the Plaintiff and other family members were involved. The great bulk of this fund was attributable to payment for injuries sustained by the Plaintiff.[3] In May 1976 the funds in that account were pledged as security for a loan obtained by Mr. White for a business investment. It was never the intention of the parties that the wife would repay any part of the loan, and the incorporation of Mr. White's agreement to assume sole responsibility to pay the loan into the interlocutory and final decrees of divorce confirms that fact. In 1978, more than a year after the

divorce became final, Mr. White's failure to make payments led to default on the loan and to the secured party's taking possession of the collateral—the bank account. The Plaintiff then brought an action in the Rhode Island Family Court to adjudge her former husband in contempt and to vacate the amended final decree. A Family Court Judge entered an order on April 10, 1979 requiring White to pay his former wife $20 per week, after he was found to be in arrears to the extent of $8,406.41. The Family Court determined the amount of the weekly payment after considering the $30 per week child support which White was then paying, and his gross income at that time of $325 per week. (Plaintiff's Exhibit D.)

Alan White filed a Chapter 7 petition on September 22, 1981, and scheduled the Plaintiff, now Irene Parisi, as an unsecured creditor in the amount of $7,226.41 resulting from a "divorce settlement." This figure is apparently the amount that the Rhode Island Family Court found that the Defendant owed the Plaintiff in December 1980.

The following additional findings of fact and conclusions of law are necessary to a determination as to the intent of the parties with respect to the agreements incorporated into the final divorce decree:

1. The Defendant admitted on examination by the Plaintiff's counsel that the Plaintiff would not have waived alimony unless the Defendant assumed sole responsibility for payment of the loan to Citizens Bank.

2. The $8,000 five-year-term savings account, which came from the settlement of a claim resulting from an automobile accident, was primarily the Plaintiff's money, and the funds were set aside at least in part to cover her future medical expenses.

3. It was also the intention of the Plaintiff that, as the balance of the loan was reduced by the Defendant, she would make withdrawals from the equity in the account to help in the upkeep of her home.

---

**3.** The total settlement (prior to deductions for legal fees and medical expenses) was $27,500, of which $25,000 was allocated to the Plaintiff's claim. (Plaintiff's Exhibit A.)

There are some characteristics of the loan-repayment agreement incorporated in the divorce decree which are not typical of alimony, maintenance, or support. For example, the Defendant's agreement to keep the loan to Citizens Bank current does not involve "long-term payments ... which would terminate upon the Plaintiff's remarriage or death." *Hopkins v. Hopkins (In re Hopkins)*, 18 B.R. 309, 311 (Bkrtcy.D.R.I. 1982). There are, however, other traditional indicia of alimony, support, and maintenance in this case, which weigh heavily in this Court's deliberations. For example, the Plaintiff testified that the funds she would have received upon her former husband's repayment of the loan would be used to support both herself and the two children of the parties, who are in the Plaintiff's custody. Furthermore, after the Plaintiff brought the Defendant before the Family Court because of his failure to keep current on the loan (resulting in default and the Plaintiff's loss of the collateral), the Family Court ordered the Defendant to make extended periodic payments to the Plaintiff—$20 per week—until the debt was paid. (Plaintiff's Exhibit D.) Also, it appears from the record here and from the transcripts of Family Court hearings that the income of the Defendant has at all relevant times been significantly higher than that of the Plaintiff. This is a factor to which some courts have attached considerable importance in determining whether one spouse's assumption of joint debts should be regarded as support rather than a property settlement.[4]

Finally, based upon the entire record we conclude that it was the understanding of both parties that the Plaintiff would waive alimony *only* if the Defendant agreed (1) to pay the $8,000 loan on which they were jointly liable, and (2) to transfer to the Plaintiff title to the marital domicile. Thus, the Defendant's agreement to keep current the $8,000 loan—in effect, to hold the Plaintiff harmless for that loan[5]—was valuable consideration in lieu of alimony.

Even if the agreement which was incorporated into the divorce decree is characterized as a division of marital property, "[p]roperty division may be nondischargeable when it is a substitute for alimony." *Singer v. Singer (In re Singer)*, 18 B.R. 782, 787 (Bkrtcy.S.D.Ohio 1982). The case at bar deals with "a substitute for alimony," and we find that the Plaintiff has met her burden of proof under Bankruptcy Rule 407.[6] Accordingly, the debt to the Plaintiff of $7,226.41 is nondischargeable as alimony, maintenance, or support pursuant to 11 U.S.C. § 523(a)(5).

Enter order accordingly.

---

**4.** *E.g., Huggins v. Huggins (In re Huggins),* 12 B.R. 850, 854 (Bkrtcy.D.Kan.1981). In *Huggins* the court found that without the debtor's agreement to assume $11,000 in debts, his former spouse "could not adequately support herself and the children *and* pay $11,000.00 in debts." Therefore, the court concluded that "the parties intended that the debt assumption give plaintiff added economic security by relieving her of those burdensome debts so that she could adequately support herself and the children. The parties intended that the debt assumption constitute support." *Id.*

Similarly, in the case at bar, absent the Defendant's assumption of the $8,000 debt—which was a loan undertaken for his own business investment—the Plaintiff would have been unable to support herself and her children, and in addition pay off the $8,000 loan.

**5.** The legislative history of § 523(a)(5) reads in pertinent part as follows:

This provision will ... make nondischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 364 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, 6320.

**6.** Rule 407 of the Rules of Bankruptcy Procedure provides:

At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the facts essential to his objection.