In re Perry D. WHEELER, Debtor.

Marilyn G. WHEELER, Plaintiff,

v.

Perry D. WHEELER, Defendant.

Bankruptcy No. 89–11201.
Adv. No. 90–1032.

United States Bankruptcy Court,
D. Rhode Island.

Jan. 2, 1991.

Perry D. Wheeler, Cranston, R.I., pro se.

Paul A. Suttell, Beals & Difiore, Providence, R.I., for plaintiff.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

At issue is whether the debtor's obligation to his former spouse, which arises out of a Final Divorce Judgment of the Providence County Family Court, is dischargeable. The plaintiff, Marilyn Wheeler, seeks to have the debt declared nondischargeable pursuant to 11 U.S.C. § 523(a)(5), on the ground that the obligation is in the nature of child support. Because the dispute is purely a legal one, the parties elected to submit the matter on briefs, in lieu of an evidentiary hearing.

## FACTUAL BACKGROUND

The plaintiff and the defendant were married on September 5, 1965, and after more than twenty years of marriage were granted a divorce on December 29, 1987, by the Providence County Family Court, on the ground of irreconcilable differences. The Family Court issued a Final Judgment in which it approved and incorporated by reference the Separation and Property Settlement Agreement ("the Agreement") entered into between the parties on November 19, 1987. Said agreement contains the parties' mutual promises and obligations regarding the dissolution of their marriage, the distribution of the marital property, and their respective parental responsibilities to their minor child.

Pursuant to the agreement, Wheeler assigned to his former wife his equitable interest in the marital domicile, and in addition assumed responsibility for all costs associated with the "open-end mortgage", which mortgage encumbers the parties' former residence. From December 1987 until January 1989, Mr. Wheeler in fact did comply with this obligation and made the required payments. Thereafter, however, in January, 1989, he stopped paying the mortgage, and that default caused Marilyn G. Wheeler to file a contempt action against him in the Family Court. On November 22, 1989, the Family Court issued an order finding Wheeler in contempt, assessed a $3,240.34 arrearage, and declared said sum immediately due and payable. Still unable to meet this financial obligation, Wheeler, on December 8, 1989, filed a Chapter 7 petition in this Court.

We are now called upon to determine the intention of the parties regarding the treatment of this "open-end mortgage" obligation, vis-a-vis a § 523(a)(5) [1] proceeding.

Three paragraphs of the Agreement, those entitled "child support", "mortgage loans" and "real property", are relevant to our determination of whether this mort-

---

1. 11 U.S.C. § 523(a)(5) provides that:
   (a) A discharge under section 727, . . ., of this title does not discharge an individual debtor from any debt—
   (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse, or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
   (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

gage obligation was intended by the parties to be in the nature of a property settlement or instead, to represent alimony, maintenance or support of the former spouse and/or child. Paragraph 2, entitled "real property", provides in relevant part that: "[t]he parties state that the value of Husband's equitable interest in said real estate is $45,000.00 subject, however, to the outstanding principal balance of the "open-end mortgage" as hereinafter set forth."

Paragraph 4, entitled "mortgage loans", states that:

"[t]he parties further acknowledge that said real estate has recently been encumbered with an "open-end mortgage" with Peoples Bank having an initial credit limit of $35,000.00. The primary purpose of this second mortgage loan was to refinance an existing loan obligation of the Husband in the amount of $16,020.25. The parties state that said loan obligation currently has an outstanding balance of approximately $26,020.00. In connection therewith, the Husband has executed a Hold Harmless and Indemnification Agreement, a copy of which is attached hereto as Exhibit "A", and the Husband does hereby ratify and confirm and incorporate herein said Agreement, and does hereby agree and covenant to indemnify, reimburse and in all other manner hold harmless the Wife for all costs, including but not limited to payment of the principal, interest, and any and all other costs connected with and incidental to such obligation and any future obligations incurred by the Husband on account of said mortgage loan. Husband agrees that this loan obligation shall not be dischargable [sic] in bankruptcy. Husband further agrees to satisfy this loan obligation in full, and to discharge said "open-end mortgage", on or before June 30, 1990.

And finally, in paragraph 7, "child support", the parties agreed that:

the Husband's assignment of his equitable interest in and to the marital domicile, as set forth in paragraph 2, shall be deemed an assignment for the benefit and support of the minor child of the marriage. In consideration of such assignment, and based upon Husband's current financial resources as hereinafter set forth, the Wife covenants and agrees to be solely and exclusively responsible for the support, maintenance and education expenses of said minor child.

Based upon these provisions, the plaintiff asserts that the full value of the debtor's equitable interest in the real estate, $45,000, was intended for the support of the minor child, and that therefore, included within this assignment is the debtor's responsibility for paying the "open-end mortgage", as child support.

### 11 U.S.C. § 523(a)(5)

On several prior occasions we have discussed the elements necessary to establish a cause of action under Section 523(a)(5). *See e.g., Young v. Young (In re Young)*, 72 B.R. 450 (Bankr.D.R.I.1987); *Parisi v. White (In re White)*, 26 B.R. 572 (Bankr.D.R.I.1983); and *Hopkins v. Hopkins (In re Hopkins)*, 18 B.R. 309 (Bankr.D.R.I.1982). In a case similar to the present one, *In re Young, supra,* we stated that "[a]ssignment of marital debts to the debtor in a divorce decree with a concomitant 'hold harmless' agreement in favor of the former spouse can be a nondischargeable obligation if it is actually intended as maintenance or support for a former spouse or child of the debtor." *Id.* at 452 (other citations omitted).

Factors often considered in making this determination include:

1.   the nature of the obligation assumed (whether for necessaries or luxuries);

2.   the type of payment (lump sum or installment);

3.   the length of the marriage;

4.   whether children of the marriage must be provided for;

5.   the relative earning power of the spouses;

6.   the adequacy of support without the debt assumption;

7.   the understanding of the parties concerning the agreement.

*Id.* at 453 (citing *Petoske v. Petoske (In re Petoske)*, 16 B.R. 412, 413–414 (Bankr.E.D. N.Y.1982) (citations omitted)).

In *In re White, supra,* we observed that "it is not what the obligation is labeled that is significant, but what the obligation actually is." *Id.* at 574 (other citations omitted).

▮ After a careful reading of the three relevant paragraphs of the Property Settlement Agreement, together with consideration of the above enumerated factors, we find that the present dispute is not unlike the situation in *In re Young, supra,* and *In re White, supra,* where we held that the debtor's assumption of said debts was intended to be in the nature of support, and therefore were nondischargeable.[2]

Here, as in *In re White*,[3] Marilyn Wheeler agreed to waive child support in exchange for the debtor's assignment of his equitable interest in the real estate, *and* his assumption of the "open-end mortgage".[4] Paragraph seven provides that because of the husband's then current financial situation, the wife is responsible for all of the minor child's living expenses. In

exchange, the husband agreed to assign his one-half interest in the marital domicile, presumably to ensure that his daughter would continue to have a place to reside.[5] This provision would have been meaningless unless the husband also intended to pay the "open-end mortgage" (a personal business debt of the debtor), as part of this support obligation.[6] Although the language of the Property Settlement Agreement could have been clearer, we conclude, nonetheless, that, *read in its entirety,* the document evidences the parties' intention to have the "open-end mortgage" obligation paid by the debtor *as part of his obligation to support his minor child.*[7] "Even if the agreement which was incorporated into the divorce decree is characterized as a division of marital property, '[p]roperty division may be nondischargeable when it is a substitute for [child support]'" *In re White, supra* at 575 (citing *Singer v. Singer (In re Singer)*, 18 B.R. 782, 787 (Bankr.S.D.Ohio 1982).

In addition, considering (1) the length of the marriage—more than twenty years; (2) the type of obligation assumed—payment of the mortgage to maintain the home; and (3) support for the child, and the likely

2. Our decision herein is neither supported by nor reliant upon the sentence in paragraph 4 of the Agreement stating that "[h]usband agrees that this loan obligation shall not be dischargable [sic] in bankruptcy." To the contrary, we agree with the court in *Watrous v. George (In re George)*, 15 B.R. 247, 248–249 (Bankr.N.D.Ohio 1981, that "[p]re-bankruptcy waivers were held to be unenforceable as being in conflict with the purposes of the Bankruptcy Laws. *In re Weitzen,* 3 F.Supp. 698 (S.D.N.Y.1933). These waivers continue to be in conflict with the purposes of the Bankruptcy Code and thus the clause in question will be enforceable only if found to be in the nature of alimony, maintenance or support."

3. Although *In re White, supra,* dealt with a waiver of alimony, rather than child support, in that proceeding we held that the plaintiff would not have "waived alimony" unless the debtor assumed payment of the debts in question, i.e. in lieu of traditional alimony payments made directly to the former spouse, and labeled as such.

4. Only at issue here is the debtor's obligation for child support. Plaintiff is not arguing her entitlement to alimony. Paragraph 6 of the Agreement, which is entitled "pension benefits", as-

signs to the plaintiff "all of Husband's right, title and interest in and to the Employees' Retirement System of the City of Providence", an amount equal to $521.00 per month. In addition, "[i]n the event that such retirement benefits are terminated prior to the death or remarriage of the Wife, the Husband shall pay to the Wife the sum of $521.00 per month as alimony." (Agreement, Paragraph 6.)

5. The debtor's present argument that his daughter now lives in a college dormitory in New Hampshire is, of course, irrelevant to our determination of what the parties intended when they entered into the Agreement.

6. The record indicates that the debt in question was incurred primarily for the debtor's business purposes.

7. It would be irrational to read these provisions any other way. For example, if the debtor had not filed bankruptcy, but instead continued to pay the second mortgage as agreed, once the mortgage was paid off, the plaintiff, as provided for in the agreement, would have acquired the debtor's full equity interest in the property, and would continue to be the sole owner of the property.

inadequacy of such support without this debt assumption; we hold that the plaintiff has established, by a preponderance of the evidence,[8] that the debt in question was intended to be in the nature of child support.

Accordingly, it is ORDERED that the plaintiff's claim listed on Schedule A–3 is determined to be nondischargeable, pursuant to § 523(a)(5).

Enter Judgment consistent with this opinion.

---

**8.** Although the defendant argues that the proper standard of proof is that of "clear and convincing evidence", we limit our use of that standard to actions brought under §§ 523(a)(2) and (a)(4). *See e.g. Guimond v. Guimond (In re Guimond),* 122 B.R. 170 (D.R.I.1990). In actions brought under § 523(a)(5), we believe that the appropriate standard of proof is that of "preponderance of the evidence", and choose to follow the line of cases applying that standard. *See In re Macys,* 115 B.R. 883, 890 (Bankr.E.D. Va.1990); *Matter of Burch,* 100 B.R. 585, 589 (Bankr.M.D.Fla.1989); *Matter of Coleman,* 37 B.R. 120, 125 n. 6 (Bankr.W.D.Wisc.1984); *Borg–Warner Acceptance Corp. v. Watkins (In re Watkins),* 90 B.R. 848 (Bankr.E.D.Mich.1988) (preponderance of the evidence standard in a Section 523(a)(6) action); *but cf In re Ellis,* 103 B.R. 977 (Bankr.N.D.Ill.1989); *In re Sweeny,* 99 B.R. 192 (Bankr.D.Conn.1989); *In re Detling,* 28 B.R. 469 (Bankr.N.D.Iowa 1983).