**In re Russell R. MARQUIS, Debtor.**

**Monica J. MARQUIS, Plaintiff,**

**v.**

**Russell R. MARQUIS, Defendant.**

**Bankruptcy No. 96–10329.
Adversary No. 96–1040.**

United States Bankruptcy Court,
D. Maine.

Jan. 13, 1997.

## MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.

Before the court on stipulated facts are plaintiff Monica Marquis' claims that certain divorce-related obligations owed her by debtor Russell Marquis are excepted from discharge under § 523(a)(5) or § 523(a)(15) of the Code.[1] For the reasons set forth below, I conclude that some of the obligations in dispute are non-dischargeable under § 523(a)(5) because they are in the nature of alimony or support, but the balance will be discharged because the plaintiff has not demonstrated nondischargeability under § 523(a)(15).

### Facts

#### 1. Divorce Obligations.

On May 22, 1995, Russell and Monica were divorced. The state court divorce judgment and associated orders obligated Russell to pay Monica $137.00 per week to support their minor son, Adam, age 17, and to pay Monica alimony of $100.00 per week for approximately two years. In addition, Russell must maintain health insurance for Monica and Adam and must pay Adam's reasonable, ongoing, uninsured medical and dental expenses.[2]

The divorce court also ordered Russell to:

a. Pay Monica's unpaid pre-divorce medical and counseling expenses;

b. Pay $500.00 in legal fees that Monica incurred in connection with obtaining an interlocutory order in the divorce proceedings; and

c. Pay and hold Monica harmless from existing MasterCard, Discover Card, Key Bank Credit Line, J.C. Penney (up to $180.00), and Central Maine Power account liabilities.

The divorce decree required Russell to liquidate his 401K retirement plan (which was declared "marital property") and to apply the net proceeds (after applicable taxes and penalties) against the couple's debts in the following order of priority: to cure all arrearages on the marital home mortgage; to pay all related real estate tax arrearages; to pay monthly mortgage installments until the home was sold; to pay Monica's pre-divorce medical and counseling expenses; to pay such real estate taxes as may come due for the home during 1995; and, finally, to pay the balance remaining (if any) equally to each spouse's divorce-related legal bills.

The decree anticipated that the marital home would be sold after January 1996 and that, after satisfying the mortgage and costs of sale and taxes, the proceeds remaining (if any) would be applied to unsatisfied debts (including Monica's pre-divorce medical and counseling debts) slated for payment from Russell's 401K plan proceeds. Any surplus was to be split equally between Monica and Russell.

Proceeds from the 401K plan did not discharge all of the obligations with which they were burdened by the divorce decree. After unsuccessful attempts to sell the home, Monica and Russell agreed that Monica would refinance the mortgage in her name alone and live there. The refinancing generated no funds to apply to bills.

At bankruptcy Russell remained obligated to pay and hold Monica harmless for her medical and counseling bills ($500.00 of which were yet unpaid), to pay and hold her harmless from her $500.00 legal bill, and to pay and hold her harmless from the credit accounts mentioned above.

#### 2. Current Circumstances.

Monica resides with Adam in the former marital home. Since the divorce she has worked irregularly through a temporary employment service. She is now between jobs.

---

1. This memorandum sets forth my conclusions of law pursuant to Fed.R.Bankr.P. 7052 and Fed. R.Civ.P. 52. Unless otherwise indicated, all references to statutory sections are to the Bankruptcy Reform Act of 1978 ("Bankruptcy Code" or "Code"), as amended, 11 U.S.C. § 101 et seq.

2. Russell must maintain Adam's health insurance for the duration of Adam's minority. As to Monica, the requirement runs until the end of the alimony term or until she obtains health insurance through employment.

From January 1, 1996, through September 22, 1996, her earnings totaled $9,356.00.[3]

Russell, who has remarried, resides with his wife and her three minor children. He's employed full-time. For calendar year 1996, through October 18, his gross earnings were $43,000.00. At the time he filed bankruptcy, Russell listed total monthly living expenses of $1,623.00.[4]

### 3. Points at Issue.

Russell concedes that his obligations to pay the sums denominated by the state court as child support and alimony are within § 523(a)(5)'s discharge exception. He has stipulated that the requirement that he maintain health insurance for Monica and Adam (and that he pay Adam's ongoing, uninsured medical and dental expenses) are similarly nondischargeable. He takes issue with Monica's claim that his divorce obligation to be solely liable for and hold her harmless from other debts survives his bankruptcy discharge.[5]

### Discussion

### 1. Section 523(a)(5).

#### a. Substance of § 523(a)(5).

Monica first asserts that Russell's obligations to satisfy her pre-divorce medical and counseling bills and to satisfy her $500.00 legal bill are excepted from discharge under § 523(a)(5) because they are debts "in the nature of alimony, maintenance or support" within the statute's meaning.[6] Section 523(a)(5) is time tested; its application straightforward.

To begin, discharge is generally favored under the Code. *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991). The party seeking to establish a § 523(a)(5) discharge exception carries the burden of proving the elements of nondischargeability by a preponderance of the evidence. *Id.; see also Dressler v. Dressler (In re Dressler)*, 194 B.R. 290, 296 (Bankr.D.R.I.1996); *Sweck v. Sweck (In re Sweck)*, 174 B.R. 532, 535 (Bankr.D.R.I.1994).

In the context of § 523(a)(5), "substance prevails over form." *Warren v. Warren (In re Warren)*, 160 B.R. 395, 398 (Bankr.D.Me.1993), *cited* in *In re Dressler*, 194 B.R. at 295. Although the bankruptcy court may appropriately consider the content of state law under which the obligation arose, *Pauley v. Spong (In re Spong)*, 661 F.2d 6, 9 (2d Cir.1981); *In re Warren*, 160 B.R. at 398–99, federal principles apply in determining whether, under the circumstances that existed at the time the obligation was created, the obligation functioned to provide support to the non-debtor obligee. *In re Dressler*, 194 B.R. at 295 (collecting authorities).

**3.** Monica regularly receives the child support and alimony payments required of Russell by the divorce decree.

**4.** *See* Schedule J, dated April 4, 1996. I note that Russell's monthly income has increased substantially over the $2,383.33 he listed on Schedule I at filing.

**5.** The debts at issue here are Russell's obligations to hold Monica harmless from certain of her creditors. Such obligations as Russell himself may have to those creditors (by contract or otherwise in the absence of the divorce decree) are outside the purview of § 523(a)(5) and § 523(a)(15). *See, e.g., Ianke v. Ianke (In re Ianke)*, 185 B.R. 297, 300 (Bankr.E.D.Mo.1995) (recognizing that a divorce decree obligation to hold an ex-spouse harmless from a debt creates an obligation between the debtor and the ex-spouse, separate from any obligation the debtor may owe to the creditor).

**6.** Section 523(a)(5) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

To assay the character of obligations arguably in the nature of alimony or support, the courts have coined and applied a number of multi-factor tests. Although the tests vary one from another in detail, their essence is to ascertain and appreciate the dissolution dynamics that led to the obligations' creation and how these obligations functioned under extant circumstances. *See In re Gibbons,* 160 B.R. [473] at 475 [ (Bankr.D.R.I.1993) ] (acknowledging variety of tests employed by other courts); *In re Stitham,* 154 B.R. [1] at 3–4 & n. 8 [ (Bankr.D.R.I.1993) ] (applying four factor test but noting existence and substantive similarity of others). For an obligation with any given characteristics, one test may be more appropriate than another. *See, e.g., In re Warren,* 160 B.R. at 399 (referring to factors pertaining to whether obligations to pay college expenses constituted support); *In re Stitham,* 154 B.R. at 2–3 (applying four factor test to determine whether short-term lump sum payment constituted alimony or support); *Wheeler v. Wheeler (In re Wheeler),* 122 B.R. 645, 646–47 (Bankr.D.R.I.1991) (applying seven factor test regarding debt assumption agreement). Regardless of the analytical paradigm employed, each case turns on its own peculiar facts. *See In re Gibbons,* 160 B.R. at 475.

*Id.* at 295–96.

### b. *Applying the Statute.*

■ *Medical Expenses.* Russell argues that the divorce court's order requiring him to pay Monica's pre-divorce accrued medical and counseling expenses should not be characterized as alimony or support because the debts were historical, not ongoing, obligations to "third parties" and because his continuing personal liability to hold Monica harmless from them arose only because his 401K liquidation and the house sale yielded insufficient proceeds to satisfy them.

I conclude, however, that the obligation is nondischargeable. To do so does not require resort to complex, multi-factor analysis. Concern for Monica's health care is a major chord in the state court's decree. Russell paid Monica's health insurance premiums before divorce. He must pay them after divorce, and acknowledges that his obligation to do so is nondischargeable. Russell would have paid (or contributed significantly toward paying) uncovered medical bills had there been no divorce. Monica must, with diminished resources, now pay uncovered expenses on her own. And payment of past bills may well affect the availability of future treatment from Monica's health care providers.

I am satisfied that Russell's obligation to hold Monica harmless from her pre-divorce medical and counseling bills fits easily within § 523(a)(5)'s discharge exception. *See Hughes v. Hughes (In re Hughes),* 164 B.R. 923, 928 (E.D.Va.1994) (medical insurance provision of divorce agreement established nondischargeable support obligation); *In re Olson,* 200 B.R. 40, 43 (Bankr.D.Neb.1996) (debtor's obligation to pay ex-wife's medical expenses survived Chapter 7 discharge and was entitled to priority payment in his subsequent Chapter 13 case) (collecting cases).

■ *Legal Fees.* The divorce court ordered Russell to pay and hold Monica harmless for $500.00 in legal fees she incurred in pursuing a "motion pending divorce." Citing *Holliday v. Kline (In re Kline),* 65 F.3d 749 (8th Cir.1995); and *Heintz v. Tremblay (In re Tremblay),* 162 B.R. 60 (Bankr.D.Me. 1993), Monica contends that the divorce court's order established a nondischargeable obligation because it was intended to operate as alimony or separate maintenance.

In *Kline* the 8th Circuit held, as a matter of law, that a court-ordered obligation owed by a debtor ex-husband to his former wife's attorney for divorce representation could come within § 523(a)(5) even though under the terms of the order he owed the obligation to the attorney rather than to his ex-spouse. 65 F.3d at 751. The court was clear, however, that the question whether a fee award was intended to serve as alimony, maintenance or support is a separate, factual question. *Id.* at 750. In *Tremblay* Judge Goodman addressed the same issues, determining first that a state court fee award directing the debtor to pay counsel fees for his children's *guardian ad litem* was "in the nature of support," and, second, that, as a matter of law, the fact that the debtor had been or-

dered to pay the attorney directly did not remove it from the statutory requirement that the debt be "to a spouse, former spouse, or child of the debtor...." 162 B.R. at 62.

Monica's complaint does not raise the questions that *Kline* and *Tremblay* confronted. . Their teachings advance her cause not at all.

Monica's contention that Russell's court-ordered obligation to pay a part of her attorney's fees is nondischargeable under § 523(a)(5) is frustrated by the absence of record support for a factual determination that the state court's fee award was intended to function as alimony, maintenance, or support to her. The parties' stipulation does not contain a copy of the interlocutory order that the $500.00 in fees were generated in obtaining.[7] The record before me provides *no* evidence that in making the award the divorce court considered the parties' financial circumstances, Monica's ability to pay, or the impact that her payment of the fees would have on her living standard. *Cf. Jones v. Jones (In re Jones)*, 9 F.3d 878, 882 (10th Cir.1993) (attorney fees generated in defense of post-divorce custody action by debtor spouse in nature of support and therefore nondischargeable).[8] Moreover, although it may seem logical that, regardless of the substance of the "order pending," the state court

would not have ordered Monica's attorney fees to be paid by Russell absent a determination of the relative financial abilities of the parties, with nothing in the record to back the premise I am unable to conclude that happened.[9]

The Maine statute authorizing an award of attorney fees in the context of an order pending divorce does not compel a determination that, as a matter of law, the state court necessarily weighed the parties' relative financial positions in awarding Monica her fees.[10] Thus, Monica has not satisfied her burden to demonstrate that the fee award is nondischargeable as alimony, separate maintenance, or support.

### 2. Section 523(a)(15).

#### a. Substance of § 523(a)(15).

Monica argues in the alternative that Russell's liability on the fee award is nondischargeable under § 523(a)(15), a recently-enacted discharge exception that operates on divorce related liabilities under certain circumstances. She also asserts that Russell's obligation to hold her harmless on credit accounts with MasterCard, Discover Card, Key Bank, J.C. Penney, and Central Maine

7. Indeed, if the order were one that functioned primarily to establish interlocutory alimony and support entitlements, Monica's case would be strengthened. *Cf. e.g.,* · *Kubera v. Kubera (In re Kubera)*, 200 B.R. 13, 17 (W.D.N.Y.1996) (attorney fees generated in enforcing support order nondischargeable pursuant to § 523(a)(5)); *Macy v. Macy (In re Macy)*, 200 B.R. 467 (D.Mass. 1996) (same).

8. There is a thin argument that, because the court ordered the fees to be paid out of house sale/401K proceeds *before* any remaining balance would be split 50/50, it considered paying the obligation as of greater priority than property settlement. The court gave the same treatment to Monica's pre-divorce medical bills (which I have determined to be nondischargeable under § 523(a)(5)), but it did so as to the credit accounts as well (and Monica does not even argue that Russell's obligation to hold her harmless on those accounts comes within § 523(a)(5)).

9. This case is distinguishable from *Strickland v. Shannon (In re Strickland)*, 90 F.3d 444, 446–47 (11th Cir.1996). In *Strickland* the Eleventh Circuit held that fees owed by the debtor to his ex-wife's attorney were nondischargeable. The fees

were generated by the ex-wife's defense of the debtor's post-divorce motion to modify child support and custody provisions of the divorce decree. *Id.* at 446. Determining that the attorney fees were in the nature of support, the court looked to Florida law and observed that the statute authorizing an award of attorney fees in a divorce matter expressly required a balancing of the parties' "relative need and ability to pay." *Id.* at 447; *see* Fla.Stat.Ann. § 61.16(1) (West 1996) ("The court may ... after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney's fees.").

10. *Compare* 19 M.R.S.A. § 693 (West Pamph. 1996) ("In accordance with section 752, subsection 4, pending a divorce action, the court may order either spouse to pay to the other spouse, or to the attorney for the other spouse, sufficient money for the defense or prosecution thereof;") *with* 19 M.R.S.A. § 721 (West Pamph.1996) ("The court *shall* consider the following factors when determining an award of alimony: ... B. The ability of each party to pay.") (emphasis added).

Power comes within § 523(a)(15). Section 523(a)(15) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> .　　.　　.　　.　　.
>
> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
>
>> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>>
>> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

■ In a recent Rhode Island case, I examined § 523(a)(15)'s policy underpinnings, noting that it was added to the Code in 1994 because Congress viewed § 523(a)(5), by itself, to be inadequate to "strike a fair balance between a divorced debtor's discharge and the needs of that debtor's former spouse or family." *In re Dressler,* 194 B.R. at 299. Section. 523(a)(5) calls for a retrospective analysis of circumstances that existed at the time a divorce-created obligation was established in an effort to determine whether the obligation was intended by the court or by the parties to function "in the nature of"

alimony or support. But the realities of modern divorce have made courts' attempts to interpret history from the bankruptcy perspective difficult at best.

Thus, no matter how painstakingly the bankruptcy court's retrospective analysis attempted to reconstruct a state court judge's intentions in setting a divorce decree's terms, *In re Sweck,* 174 B.R. at 535; or the parties' intentions in negotiating a divorce settlement agreement, *In re Stitham,* 154 B.R. at 4 n. 8, *see also In re Gianakas,* 917 F.2d [759] at 763 [ (3d Cir. 1990) ]; *In re Hesson,* 190 B.R. [229] at 233 [ (Bankr.D.Md.1995) ], the results were less than perfect and often resulted in undesirable hardships for the nondebtor spouse and his or her dependents. *In re Gianakas,* 917 F.2d at 762; H.R.Rep. No. 835, 103d Cong., 2d Sess. § 304 (1994); Norton § 47:35.5 (1994 & Supp.1995); 3 King, *Collier on Bankruptcy* ¶ 523.19E at 523–177....

Congress enacted § 523(a)(15) in an attempt to lessen the chance that a divorce obligee's claims might slip through § 523(a)(5)'s cracks and be discharged unjustly. Thus, § 523(a)(15) now excepts from discharge non-alimony debt, incurred by the debtor in connection with divorce proceedings if (1) the debtor can afford to pay it (§ 523(a)(15)(A)) *and* [2] if discharge would result in [a] detriment to the obligee that outweighs the benefit of discharge to the debtor. *See, e.g., In re Hesson,* 190 B.R. at 233–34; *In re Butler,* 186 B.R. [371] at 373 [ (Bankr.D.Vt.1995) ]; *In re Hill,* 184 B.R. [750] at 752–53 [ (Bankr.N.D.Ill.1995) ].

*In re Dressler,* 194 B.R. at 300 (footnote omitted). In other words, only if the debtor can pay *and* the obligee's detriment outweighs the debtor's benefit from discharge, will the obligation not escape bankruptcy discharge.[11]

The statute's awkward construction has resulted in not a little confusion with respect to burden of proof issues, discussed *infra,* and, unhappily, with regard to its very substance. *Compare Zimmerman v. Soderlund (In re Soderlund),* 197 B.R. 742, 747–48 (Bankr.D.Mass.1996) (holding that a cause of action exists under § 523(a)(15) by

---

11. The paraphrase of § 523(a)(15)'s elements set forth in *Dressler* is an attempt at providing a "straightforward, plausible reading of the section's substance, eliminat[ing] the statute's troublesome triple negative construction." *In re Dressler,* 194 B.R. at 300 n. 26 (citing *In re Butler,* 186 B.R. at 373).

Significantly, § 523(a)(15) calls for a "current circumstances" review of non-support/alimony obligations and the consequences of discharge on them. The bankruptcy court should assess those circumstances in light of the discharge exception's prerequisites at the time a contested § 523(a)(15) complaint comes to trial. *In re Dressler*, 194 B.R. at 300.[12] Applying § 523(a)(15)(A), the debtor's ability to pay the obligation at issue is nearly uniformly assessed under an "ability to pay" model that "essentially mirrors" the analytical framework that has evolved under § 1325(b)(2). *In re Dressler*, 194 B.R. at 304; *see also Greenwalt v. Greenwalt (In re Greenwalt)*, 200 B.R. 909, 913 (Bankr. W.D.Wash.1996); *Cleveland v. Cleveland (In re Cleveland)*, 198 B.R. 394, 399 n. 6 (Bankr. N.D.Ga.1996); *Morris v. Morris (In re Morris)*, 197 B.R. 236, 243 (Bankr.N.D.W.Va. 1996). Thus, the court determines "what funds are available to the debtor to pay the obligation after deducting 'reasonably necessary' expenses." *In re Dressler*, 194 B.R. at

304 (citing *In re Cardillo*, 170 B.R. 490, 491 (Bankr.D.N.H.1994)); 1 Lundin, *Chapter 13 Bankruptcy* § 5.31 (1st ed. 1993).

Section 523(a)(15)(B)'s directive that, if the debtor has the ability to pay, the debt will escape discharge only if "discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse or child of the debtor ..." is, to be charitable to its drafters, imprecise. In *Dressler*, I concluded that to demonstrate the character of detrimental consequence necessary to satisfy § 523(a)(15)(B), the plaintiff must show more than "an affordable monetary loss...." 194 B.R. at 305.[13]

Cases decided both before and after *Dressler* have considered whether myriad consequences demonstrate detrimental consequences sufficient to outweigh the benefit to be obtained by the debtor from discharge, with mixed results. *See, e.g., Taylor v. Taylor*, 199 B.R. 37, 41–42 (N.D.Ill.1996) (al-

which a debtor's own former divorce attorneys might except from discharge the debtor's contractual obligation to them) *with Woloshin, Tenenbaum & Natalie, P.A. v. Harris (In re Harris)*, 203 B.R. 558, 560–62 (Bankr.D.Del.1996) (criticizing *Soderlund*, recognizing that such obligations do not come within the purview of § 523(a)(15)).

12. In a § 523(a)(15) case, the court is not dealing with the court's or the parties' intent at the time of the decree or agreement. Instead, the court is directed to determine the debtor's ability to pay the debt and weigh the benefit of discharging the debt against the detrimental consequences to the recipient....

This is not a historical search, but as with a student loan inquiry under § 523(a)(8) is an examination of current circumstances. For example, after the filing of the case, either party might have sustained a disabling injury or may have won the lottery, or have experienced a substantial change in earnings. Postfiling events could easily affect either the debtor's ability to pay the debt or the balance between debtor's benefit from discharge and the detrimental consequences of discharge to the recipient. Use of a time substantially before the trial date could produce a silly result that mocks congressional intent.

*In re Dressler*, 194 B.R. at 300–01 (quoting *In re Hesson*, 190 B.R. at 238 (citations omitted)); *see also Schmitt v. Eubanks (In re Schmitt)*, 197 B.R. 312, 316 (Bankr.W.D.Ark.1996) (viewing circum-

stances at the time of trial allows for a more informed analysis of changed events and the benefits of a fresh start); *Bodily v. Morris (In re Morris)*, 193 B.R. 949, 952–53 (Bankr.S.D.Cal. 1996) (recognizing that benefits of a "fresh start" to debtor are not always immediately obvious, holding that time of trial provides more accurate analysis of parties' circumstances); *Becker v. Becker (In re Becker)*, 185 B.R. 567, 570 (Bankr. W.D.Mo.1995) (stating that the relevant time of inquiry is "the time of the bankruptcy," but looking at economic changes post petition); *but see Taylor v. Taylor (In re Taylor)*, 191 B.R. 760, 765 (Bankr.N.D.Ill.1996) (noting split of authority); *Carroll v. Carroll (In re Carroll)*, 187 B.R. 197, 200 (Bankr.S.D.Ohio 1995) (stating that the relevant time of inquiry is the filing of bankruptcy); *Hill v. Hill (In re Hill)*, 184 B.R. 750, 754 (Bankr. N.D.Ill.1995) (holding that the relevant time of inquiry is the date of the filing of the complaint).

13. The *Dressler* plaintiff had already paid the obligations that were the subject of her § 523(a)(15) complaint using borrowed funds. She had substantial earning capacity and more than enough cash on hand to pay off that borrowing. She demonstrated no detriment above and beyond the fact that she had to pay money. I concluded that a showing of simple (and affordable) financial loss (even a substantial one) did not constitute the character of harm required to satisfy § 523(a)(15)(B) because that is the lot shared by virtually all unsecured creditors in Chapter 7 bankruptcy. *In re Dressler*, 194 B.R. at 305–06.

though debtor had ability to pay $60,000 debt to former spouse, debt found dischargeable where former spouse's disposable income exceeded $750,000 and detriment to her was "psychological more than anything else"); *Jenkins v. Jenkins (In re Jenkins)*, 202 B.R. 102, 106 (Bankr.C.D.Ill.1996) (although debtor had ability to pay, debt held dischargeable where finding of nondischargeability would produce no benefit for former spouse, given her "oppressive" financial affairs); *In re Cleveland*, 198 B.R. at 400–01 (where discharge of debts to former spouse would provide debtor with "surplus funds," but would probably force non-debtor former spouse into bankruptcy, debts held nondischargeable).

### b. *Burden of Proof.*

■ *Dressler* determined that § 523(a)(15) plaintiffs bear the burden of proof on all of the discharge exception's elements. My analysis there relied heavily on Judge Conrad's reasoning in *In re Butler*, 186 B.R. 371 (Bankr.D.Vt.1995). Noting that the burden of proof issue was generating considerable confusion in the courts,[14] I concluded that a variety of sensible reasons militates in favor of such a burden of proof allocation. *In re Dressler*, 194 B.R. at 301–04. I continue to hold that view, but I will not repeat the discussion here.

As I noted in *Dressler*:

The statute and the rules do not require [...] procedural gymnastics. They are wholly unnecessary. Although § 523(a)(15)'s phrasing is not a model of style, Congress did not intend the section to be a complex provision. If the statute's substance can be fairly applied with simplicity, the courts should not construct procedural labyrinth around it.

A § 523(a)(15) plaintiff has every motivation (and ability) to demonstrate that the debtor has the ability to pay the obligation in question. And the plaintiff has the motivation (and ability) to prove that the detrimental consequences of discharge outweigh the benefits that the debtor would otherwise gain. Thus, I conclude that the § 523(a)(15) plaintiff bears the burden of production and proof on all elements of dischargeability.

194 B.R. at 303–04 (footnote omitted).[15]

Thus, to prevail, Monica must show that the obligations at issue are divorce-generated, that the debtor has the ability to pay them, *and* that discharging the debt causes detrimental consequences to her that outweigh the benefits that Russell would derive from discharge.

### c. *Applying the Statute.*

■ To begin, the obligations at issue are plainly within § 523(a)(15)'s general purview. Russell incurred each of them through operation of the state court's divorce decree. Beyond that, I have no trouble concluding that

---

**14.** If, as Judge Conrad observed in *In re Butler*, it may be said that the "use of triple negatives in [§ 523(a)(15)] has turned an otherwise well intended statute into sausage," 186 B.R. at 373, the growing disagreement among courts as to whether, and how, the subsection operates to alter settled principles regarding the burden of proof in creditor-initiated dischargeability disputes threatens to make it hash. *In re Dressler*, 194 B.R. at 301.

**15.** The burden of proof issue does continue to foster divergent views. *In re Dressler*, 194 B.R. at 303; *see generally Stone v. Stone (In re Stone)*, 199 B.R. 753, 759–66 (Bankr.N.D.Ala.1996) (collecting cases within the so-called "majority group," the "bifurcated group," and the "minority group"). Although *Butler* and *Dressler* articulate what is generally characterized the "minority view," a fair number of opinions, including several recent ones, have agreed that it is entirely fair, and makes good sense, to place the burden of proof on the plaintiff. *In re Greenwalt*, 200 B.R. at 913; *Willey v. Willey (In re Willey)*, 198 B.R. 1007, 1013 (Bankr.S.D.Fla.1996) (appropriate to place burden on plaintiff non-debtor wife, especially where evidence she violated discovery orders in attempt to hide true financial condition); *Adie v. Adie (In re Adie)*, 197 B.R. 8, 9 n. 1 (Bankr.D.N.H.1996) (although statutory language "convoluted," creditor seeking determination of nondischargeability on what would otherwise be dischargeable debt should bear burden of persuasion); *Samayoa v. Jodoin (In re Jodoin)*, 196 B.R. 845, 853 n. 12 (Bankr.E.D.Cal.1996) (adopting majority view, but recognizing that "[t]he ... critique of the majority view ... raises factors of sufficient merit to make it uncertain that the majority view ultimately will prevail in the appellate courts."). *See also* Mary Jo Newborn Wiggins, *Testing the Limits of Congressional Intent: Divorce Obligations in Bankruptcy After the 1994 Reform Act*, 6 J.Bankr.L. and Prac. 181, 192–93 (1997) (observing that the *Butler* approach is "most persuasive" of burden of proof authorities, but acknowledging that it does not strictly track § 523(a)(15)'s "cumbersome" text).

Russell has the ability to pay them. His current monthly income exceeds $4,400.00, while available evidence demonstrates monthly expenses of $1,623.00.

But Monica's claim comes a cropper on § 523(a)(15)(B)'s requirement that nondischargeability hinges on a showing that the detrimental consequences she will suffer outweigh the benefits that Russell will garner by discharge. Although it's apparent that Russell can more easily pay the outstanding $500.00 legal bill and the assorted credit accounts at issue, Monica has provided no evidence that leaving her to pay them would cause her any hardship. Although her income is in evidence, Monica has provided no information regarding her living expenses, overall financial circumstances, or lifestyle. It may well be that she can affordably pay the obligations at issue.[16]

Without more, an income comparison and conclusory plea of "difficulty" will not satisfy § 523(a)(15)(B). To prevail, Monica must demonstrate that discharging the obligations at issue, and leaving her to pay them, will trigger consequences that affect her materially and adversely. For example, she might produce evidence to show if Russell's hold harmless obligations are discharged, she would be forced from her home, left with too little to pay for food and necessities, face intolerable conditions for raising her son, or pushed into bankruptcy herself.[17] This she has failed to do.

### Conclusion

Over and above the claims that he concedes to be nondischargeable, Russell's obligation to pay Monica's outstanding pre-divorce medical and counseling bills are nondischargeable, as well. The balance of

Monica's claims are discharged. A separate order shall enter forthwith.

---

16. In her effort to demonstrate Russell's ability to pay, Monica has argued that the debts before me (credit accounts and legal fees) presently total no more than $3,615.18, probably much less.

17. For today, it is unnecessary to outline precisely the requisites of § 523(a)(15)(B). Having only claimed that payment of the discharged obligations would be difficult, and having provided

no particulars, Monica has not approached the statute's threshold. See H.R.Rep. No. 835, Cong., 2d Sess § 304 (1994) U.S.Code Cong. & Admin.News 1994, p. 3363 ("The benefits of the debtor's discharge should be sacrificed only if there would be a substantial detriment to the non debtor spouse that outweighs the debtor's need for a fresh start.").